Pamela A. CIMINO, Individually and as Administratrix of the Estate of Thomas J. Cimino, Deceased; and Thomas W. Cimino, Individually, Appellants

v.

VALLEY FAMILY MEDICINE, Mark W. Morrissey, M.D., and James G. Lichter, M.D., Appellees.

Superior Court of Pennsylvania.

Submitted June 26, 2006.

Filed Nov. 28, 2006.

Charles L. Bell, Jr., Arnold, for appellants.

Howard A. Chajson, Pittsburgh, for Lichter, appellee.

John W. Jordan IV, Pittsburgh, for Morrissey, appellee.

BEFORE: TODD, BENDER, and GANTMAN, JJ.

OPINION BY GANTMAN, J:

¶ 1 Appellants, Pamela A. Cimino, individually and as administratrix of the estate of Thomas J. Cimino, deceased, and Thomas W. Cimino, individually, appeal from the pre-trial order entered in the Allegheny County Court of Common Pleas, which (1) precluded the anticipated trial testimony of Appellants' medical expert, Herbert A. Rubin M.D., relating to the standard of care applicable to Appellees, Valley Family Medicine, Mark W. Morrissey, M.D., and James G. Lichter, M.D., in this medical malpractice action; and (2) dismissed Appellants' case. Specifically, Appellants ask us to determine whether the trial court erred when it declared Dr. Rubin's medical license "restricted" for purposes of the Medical Care Availability and Reduction of Error Act ("MCARE Act").[1] We hold the court properly declared that Dr. Rubin's medical license was "restricted" within the meaning of Section 1303.512(b)(1) of the MCARE Act, barred his testimony as an expert on the applicable standard of care in Appellants' medical malpractice case, and dismissed Appellants' case, because Dr. Rubin was Appellants' only medical expert witness. Accordingly, we affirm.

¶ 2 The trial court opinion fully sets forth the relevant facts and procedural history of this case as follows:

Thomas [J.] Cimino suffered from various ailments of his gastrointestinal system and liver that culminated in his death on April 4, 2002. [Appellant] Pamela A. Cimino, Administratrix for the Estate of Thomas [J.] Cimino, initiated this suit against [Appellees] Valley Family Medicine ("Valley"), Mark W. Morrissey, M.D. ("Morrissey"), James G. Lichter, M.D. ("Lichter"), and David L. Tomaselli, M.D. ("Tomaselli") by writ of summons on March 23, 2004, for their negligence in caring for Mr. Cimino prior to his death.

Morrissey ruled [Appellant] to file a complaint on April 5, 2004 and [Appellant] filed a complaint and requisite certificates of merit on April 26, 2004. On September 26, 2005, the court dismissed Tomaselli from the case with prejudice. The case was scheduled for trial on January 26, 2006. At the conciliation of this case before the undersigned on that date, the remaining [Appellees], Valley, Morrissey, and Lichter, addressed the issue of whether [Appellant's] expert, Dr. Herbert A. Rubin ("Dr. Rubin"), was competent to testify as an expert because his medical license had been "restricted" pursuant to the Medical Care Availability and Reduction of Error ("MCARE") Act.

After reviewing the briefs and hearing argument, this court ordered that [Appellant] was prohibited from presenting any testimony from Dr. Rubin based on his restricted license. Because Dr. Rubin was [Appellant]'s only [medical] expert, the case was dismissed.

[Appellant] filed a notice of appeal from that order, and on February 10, 2006, this court ordered [Appellant] to file a concise statement of matters complained of on appeal pursuant to [Pa.R.A.P] § 1925(b). On February 13, 2006, [Appellant] filed a concise statement raising the issue that the dismissal of [Appellant's] case was improper where Dr. Rubin's license suspension had been stayed and he was in no way prohibited from practicing medicine and therefore not in violation of the MCARE Act.

(Trial Court Opinion, filed March 23, 2006, at 2–3).

---

1. 40 P.S. §§ 1303.101–1303.1115.

¶ 3 On appeal, Appellants present the following issue for our review:

WHETHER THE TRIAL COURT ERRED IN DISMISSING APPELLANTS' CASE AGAINST THE APPELLEES NAMED HEREIN, BASED UPON THE PROHIBITION FROM PRESENTING AT TRIAL ANY TESTIMONY OF [APPELLANTS' MEDICAL EXPERT], RELATING TO THE STANDARDS OF CARE APPLICABLE TO THE ABOVE–NAMED APPELLEES, BASED UPON HIS RESTRICTED LICENSE, GIVEN THAT THE SUSPENSION OF THE LICENSE OF [APPELLANTS' MEDICAL EXPERT] HAD BEEN STAYED AND HE WAS IN NO WAY PROHIBITED FROM PRACTICING MEDICINE, TREATING PATIENTS, HOLDING HOSPITAL PRIVILEGES, AND/OR TEACHING, AND THEREFORE NOT IN VIOLATION OF 40 P.S. § 1303.512(B)(1)?

(Appellant's Brief at 3).

■ ¶ 4 Our standard of review of a trial court's decision to preclude expert testimony is as follows:

Decisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court. We may reverse only if we find an abuse of discretion or error of law.

*Weiner v. Fisher*, 871 A.2d 1283, 1285 (Pa.Super.2005) (internal citation omitted). The issue of whether an expert's medical license is "restricted" for purposes of the MCARE Act is fundamentally a matter of statutory interpretation, which is a question of law and our review is plenary. *Smith v. Paoli Memorial Hosp.*, 885 A.2d 1012, 1016 (Pa.Super.2005). Nevertheless,

[W]e are constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501–1991. The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to rules of grammar and according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.

*Weiner, supra* at 1285–86 (most internal citations and quotation marks omitted). When the words of a statute are not explicit, we may ascertain the intention of the General Assembly by considering the former law, if any, and other statutes based on the same or similar subjects. *Fisher v. Com., Dept. of Public Welfare*, 509 Pa. 164, 501 A.2d 617 (1985), *cert. denied*, 479 U.S. 911, 107 S.Ct. 308, 93 L.Ed.2d 283 (1986).

■ ¶ 5 Appellants argue Dr. Rubin should have been permitted to testify as a medical expert in their medical malpractice action. Appellants contend the purpose of Section 1303.512(b)(1) is to ensure that those parties giving expert medical opinions in medical professional liability actions are practicing physicians who have met the necessary requirements through education and testing to have sufficient knowledge in their areas of expertise to provide competent expert testimony. Appellants aver the term "unrestricted physician's license" under Section 1303.512(b)(1) of the

MCARE Act does not encompass the kinds of technical restrictions placed upon Dr. Rubin's license. Appellants allege Dr. Rubin's license to practice medicine was not limited, as he had completed all requirements necessary to hold an "unrestricted physician's license" at the time of his deposition. Appellants concede Dr. Rubin's medical license was subject to revocation but insist the revocation was stayed, and Dr. Rubin was placed on probation for five years. Appellants submit the conditions of Dr. Rubin's probation were strictly technical and did not limit his ability to practice medicine in his board certified field of internal medicine or in his specialty of gastroenterology, to teach, or to maintain his staff privileges at the hospitals where he practices. Appellants maintain Section 1303.512(b)(1) was not intended to preclude medical expert witnesses by enforcing technicalities to disqualify a practicing physician otherwise competent to testify in a medical malpractice action.

¶ 6 Further, Appellants argue Pennsylvania law supports their position that Dr. Rubin's license is not "restricted" within the meaning of the MCARE Act. Appellants assert a "license without restriction" as defined in Section 422.29(a) of the Pennsylvania Medical Practice Act of 1985[2] refers to the academic criteria necessary to qualify for a license to practice medicine without restriction or limitation, as evidenced by the subsequent subparagraphs referring to levels of training and examinations required to obtain a medical license. Appellants insist Dr. Rubin's medical license empowered him to practice medicine without restrictions within the meaning of Section 422.29. Appellants conclude the trial court erred when it deemed Dr. Rubin's medical license "restricted" under the MCARE Act, prohibited him from testifying as a medical expert witness on the applicable standard of care, and dismissed Appellants' case. We disagree.

■ ¶ 7 The MCARE Act sets forth the criteria for qualification of a medical expert witness as follows:

### § 1303.512. Expert Qualifications

(a) **General Rule.**—No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

(b) **Medical Testimony.**—An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

(1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

(2) Be engaged in or retired within the previous five years from active clinical practice or teaching.

Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

(c) **Standard of care.**—In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

(1) Be substantially familiar with the applicable standard of care for the spe-

**2.** 63 P.S. § 422.29.

cific care at issue as of the time of the alleged breach of the standard of care.

(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

(3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

**(d) Care outside specialty.**—A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

(1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and

(2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

**(e) Otherwise adequate training, experience and knowledge.**—A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.

40 P.S. § 1303.512. A physician who does not qualify as a medical expert for purposes of the MCARE Act may be precluded from testifying as a medical expert in a medical malpractice action. *See, e.g., Bethea v. Philadelphia AFL–CIO Hosp. Ass'n,* 871 A.2d 223 (Pa.Super.2005) (holding physician with expired medical license does not possess unrestricted physician's license for purposes of MCARE Act).

■ ¶ 8 Instantly, the MCARE Act offers no specific definition of the term "unrestricted" as it pertains to a physician's license. 40 P.S. §§ 1303.101–1303.1115. Therefore, we look to the plain meaning of the term "unrestricted" for purposes of Section 1303.512(b)(1). *See Weiner, supra.* In its common usage, the term "unrestricted" denotes a medical license subject to no limitations or restraints. We conclude the plain and unambiguous meaning of "unrestricted physician's license" is a license free of any conditions placed on the licensee's ability to practice medicine. *See id.* Thus, to qualify as a medical expert for purposes of Section 1303.512(b)(1) of the MCARE Act, a physician must possess a valid physician's license without limitations or conditions which restrict in any way the physician's ability to practice medicine. *See* 40 P.S. § 1303.512.

¶ 9 Similarly, Section 422.29(a) of the Pennsylvania Medical Practice Act of 1985 defines a "license without restriction" as a type of license which "empowers the licensee to practice medicine and surgery **without any restriction or limitation.**" *See* 63 P.S. § 422.29(a) (emphasis added). Importantly, subsequent provisions of the Act delineate the conditions under which a medical license can be limited or restricted upon a licensee's violations of the Act. Specifically, a medical license might be revoked, suspended, limited or otherwise restricted when, *inter alia,* a physician fails to demonstrate the qualifications for a license **and/or** makes fraudulent representations in the practice of the profession. *See* 63 P.S. §§ 422.41(1)(11), 422.42(3). Although enforcement of a revocation or suspension can be stayed and the licensee placed on probation, the probationary order can be vacated for noncompliance.

*See* 63 P.S. § 422.42(6). Thus, the regulations authorized by the Pennsylvania Medical Practice Act relate to both the educational qualifications for and the ethical practice of medicine in Pennsylvania. The language of this Act further supports our conclusion that the plain and unambiguous meaning of an "unrestricted license" is a license unencumbered by limitations or conditions for **any** reason. *See Fisher, supra.*

¶ 10 The Medical Board of California, Division of Medical Quality, revoked Dr. Rubin's license, but stayed the revocation and placed Dr. Rubin on probation for five years, effective June 13, 2005. (*See* [Appellee] Lichter's Response to [Appellants'] Motion *In Limine* in the Nature of a Motion to Strike, Exhibit 3, 1/26/06, at 2; R.R. at 299a). During his probationary period, Dr. Rubin had to comply with various terms and constraints: he had to (1) successfully complete courses in medical record keeping and ethics; (2) obtain a billing monitor who shall monitor Dr. Rubin's billing for the duration of his probation (in lieu of a monitor, Dr. Rubin could participate in a professional enhancement program); (3) prior to engaging in the practice of medicine, provide a copy of the Decision(s) and Accusation(s) to the Chief of Staff or the Chief Executive Officer at every hospital where privileges or membership are extended to Dr. Rubin, at any other facility where Dr. Rubin engages in the practice of medicine, and to the Chief Executive Officer at every insurance carrier which extends malpractice insurance coverage to Dr. Rubin; (4) submit quarterly declarations stating whether there has been compliance with all the conditions of probation; (5) inform the Division of his business and residence address at all times; (6) inform the Division of travel to any area outside the jurisdiction of California for more than thirty days; (7) be available in person for interviews upon request, either with or without prior notice, throughout the term of probation; (8) notify the Division within thirty days of departure if leaving the State of California to reside or to practice elsewhere; (9) notify the Division within thirty days if Dr. Rubin stops practicing medicine in the State of California; and (10) comply with all financial obligations prior to completion of probation. (*See id.* at 2–7; R.R. at 299a–304a). If Dr. Rubin violates probation in any respect, his license can be revoked. (*Id.* at 6; R.R. at 303a).

¶ 11 In determining Dr. Rubin's medical license was a restricted license for purposes of the MCARE Act, the trial court reasoned:

> It is undisputed that the State of California revoked Dr. Rubin's license, but stayed the revocation pursuant to a settlement agreement. The agreement provides that so long as Dr. Rubin complies with certain requirements during the probationary period, the license **will be fully restored in three years.** Dr. Rubin was on probation when this case was called for trial. Just because he could practice medicine, as [Appellants argue], does not mean that his license was unrestricted. To the contrary, he was not only on probation, but had to comply with a series of requirements in order to have his license fully restored. The fact that Dr. Rubin's license needs to be "restored" is sufficient basis for this court to determine that the license is restricted, thus disqualifying Dr. Rubin from testifying.

(Trial Court Opinion at 4) (emphasis added). Based upon our careful review of the applicable law, we agree with the court that Dr. Rubin's probationary requirements constituted limitations and restrictions that encumbered his medical license, which is subject to restoration upon completion of probation. Dr. Rubin's license

to practice medicine was not free; it was conditioned upon his compliance with very specific checks, oversight, and reporting requirements. An "unrestricted" license does not have such impediments and restraints.

¶ 12 Thus, Dr. Rubin was not competent under the MCARE Act to testify as a medical expert on the applicable standard of care in Appellants' medical malpractice case. Without medical expert testimony, Appellants could not establish their *prima facie* case of medical negligence. Accordingly, the trial court properly dismissed the case. *See Grossman v. Barke,* 868 A.2d 561, 566 (Pa.Super.2005), *appeal denied,* 585 Pa. 697, 889 A.2d 89 (2005) (stating expert testimony is necessary to explain complex medical issues and to establish *prima facie* claim regarding physician's negligence).

¶ 13 Based upon the foregoing, we hold the court properly declared that Dr. Rubin's medical license was "restricted" within the meaning of Section 1303.512(b)(1) of the MCARE Act. As such, the court correctly precluded him from testifying as an expert in Appellants' medical malpractice case and dismissed Appellants' case, because Dr. Rubin was Appellants' only medical expert witness on the applicable standard of care. Accordingly, we affirm.

¶ 14 Order affirmed.