OPINION
{¶ 1} Appellant, Fredrica Snyder, appeals the judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division, dated November 7, 2006, which reaffirmed that court's judgment entry, dated February 6, 2006, terminating appellant's *Page 2 
parental rights over Alice Kangas and granting appellee, Ashtabula County Children Services Board, permanent custody. We had reversed and remanded the earlier decision for the limited purpose of allowing appellant to cross-examine the guardian ad litem concerning her report and to present rebuttal evidence regarding it. At issue is whether the court properly made a best interest determination under R.C. 2151.414
and whether the court's decision is supported by the weight of the evidence. For the reasons that follow, we affirm.
 {¶ 2} Alice Kangas was born on January 30, 1994 to appellant and Gerald Kangas. When these proceedings began in April 2004, Alice was ten years old. She is autistic and mentally retarded, and has attention deficit hyperactivity disorder. She cannot read or write, and functions academically at the level of a three-and-a-half year old.
 {¶ 3} Appellant also has a son, Thomas Sterba, who was born on August 23, 1996 to appellant and Marshall Sterba. Neither Mr. Kangas nor Thomas are at issue here.
 {¶ 4} On April 1, 2004, Amy Piotrowski, Alice's special education teacher at Happy Hearts School, a school for special needs children, reported that: 1. Alice complained her mother's boyfriend was touching her inappropriately; 2. she complained of a burning sensation when urinating; and 3. Alice was coming to school with dried feces in her underwear. At the time, appellant and her children were living with Mike Golagram in a men's boarding house where appellant and the children slept on a couch and chairs in the living room. Alice's allegation of sexual abuse was against Golagram. *Page 3 
At the time, appellant was homeless and, at appellee's urging, she and her children moved to a shelter called Homesafe.
 {¶ 5} Appellee learned appellant had mental health problems for which she had not taken her prescribed medicine for several months. At Homesafe appellant was observed giving Thomas his prescribed medicine at the wrong time as well as striking and verbally abusing both Alice and Thomas.
 {¶ 6} On April 8, 2004, appellant stated she was overwhelmed and was taken to the Ashtabula County Medical Center emergency room. On that date, appellee obtained emergency temporary custody of the children. Thomas was subsequently placed in the custody of his natural father where he remains. Alice was placed in the custody of her paternal aunt Laura Dalrymple, who currently has custody of her.
 {¶ 7} On April 9, 2004, appellee filed a complaint for temporary custody, alleging Alice was a dependent child and the victim of sexual abuse. On April 27, 2004, appellant stipulated the children were dependent, after which appellee obtained temporary custody of Alice and her aunt was granted legal custody.
 {¶ 8} A case plan was journalized for appellant and Alice with the goal of reunification. Pursuant to the case plan, appellant was required to cooperate with the investigation regarding the allegation of sexual abuse; obtain counseling; attend anger management and parenting classes; take her medications as prescribed; obtain a payee to help her manage her income; and obtain adequate housing.
 {¶ 9} Due to, among other things, appellant's failure to exercise regular visitation, on June 2, 2005, appellee moved to terminate appellant's parental rights and to obtain permanent custody of Alice. A hearing on the motion was held on September *Page 4 
20, 2005. Appellant did not attend because she was "tired, weak, and nervous," although she had notice of it. Her attorney's motion for continuance was denied.
 {¶ 10} Appellant's case manager, Beverly Anderson, testified that in April 2004, appellee obtained emergency custody due to Alice's allegations of sexual abuse and appellant's physical abuse of Alice. Appellant learned of the allegations against Golagram in April 2004, but stayed with him until June 2004, when she reported she moved out because he had choked her. One week later she returned to Golagram's house, and denied that he had choked her. Appellant remained with him until September 2004.
 {¶ 11} Appellant failed to obtain housing and continued to move around, staying with different men. At the time of the hearing, appellant was living with John Bordell in a one-bedroom apartment. While living with Bordell, appellant left several incoherent messages with appellee. In one message appellant said Bordell kept guns in the apartment. On a separate occasion appellant called Ms. Anderson from Bordell's apartment while they were fighting. Ms. Anderson heard Bordell tell appellant to move out.
 {¶ 12} Ms. Anderson also testified appellant had difficulty managing her money, and had allowed it to be mismanaged by others. However, appellant refused to accept a payee to help her manage her money.
 {¶ 13} Ms. Anderson testified that while Alice was in appellant's care, Alice regularly came to school hungry and wearing dirty clothes that did not fit. Between March 2005 and June 2005, appellant stopped visitation and all contact with Alice. The case plan allowed appellant to have supervised bi-weekly visitation with Alice at the *Page 5 
Rooms to Grow facility. Appellant failed to attend ten of thirty scheduled visits. During these visits there was little interaction between appellant and Alice. Alice would run around playing with toys, while appellant constantly screamed and yelled at her.
 {¶ 14} Ms. Anderson testified that initially, appellant complied with her case plan. Then, beginning in 2005, her compliance began to deteriorate. She stopped going to counseling and stopped taking her medication.
 {¶ 15} She testified Alice feels secure with her aunt. The two have a strong bond. Her aunt is willing and able to meet Alice's needs. She said permanent custody is in Alice's best interest so her aunt can adopt her and Alice can feel secure.
 {¶ 16} Shirley Howland, case manager from Ashtabula County Board of Mental Retardation and Developmental Disabilities ("MRDD"), testified that when Alice was seven, appellant repeatedly sent her to school with lice. When Alice was living with appellant, she did not take Alice's medical problems seriously. Appellant cannot independently care for Alice. Appellant became inconsistent in taking her effexor for depression and, at times she would stop taking it. On one occasion, at Bordell's urging, appellant increased her effexor dosage without consulting her doctor.
 {¶ 17} Appellant's behavior has also been erratic. She has left incoherent telephone messages for Ms. Howland which were sometimes paranoid ranting. In April 2005, Ms. Howland lost contact with appellant. In August 2005, appellant appeared at Alice's school without apparent reason, yelling and screaming about removing some names from Alice's emergency authorization.
 {¶ 18} Alice's teacher Ms. Piotrowski testified that while Alice was living with appellant, Alice would come to school dirty, with her hair disheveled, and wearing the *Page 6 
same clothes for days. One day Alice used several sexually explicit phrases at school. On another occasion at school, when Alice was eight years old, she placed her right hand into the front of her pants and said loudly, "oh, baby, oh, baby, f___ me, f___ me" repeatedly. On April 1, 2004, Alice said she had defecated in her pants. Ms. Piotrowski took her to the bathroom and found dried feces in her underwear. Alice also said she experienced burning while urinating. Her teacher asked her if she had touched "it," and she said her "mom's boyfriend had." Since Alice has been living with her aunt, her behavior has improved, and Alice is happy and calm.
 {¶ 19} Lori Baker, a case aid, testified she transported appellant to her visitations with Alice. Appellant had difficulty remembering the visitations, and needed constant reminding from the case worker. There were times when Alice did not want to visit with her mother and became anxious prior to visitation.
 {¶ 20} Alice's aunt, Laura Dalrymple, testified that prior to these proceedings, she had allowed appellant and Alice to stay with her about twenty times when appellant was homeless. She said appellant neglected Alice by failing to provide her with food and proper clothes and by exposing her to sexual abuse. In 2000, when Alice was six years old, her aunt came to pick her up and saw Alice had "sucker bites" on her neck. Ms. Dalrymple made a police report, and Alice stayed with her at that time for six months. Appellant brought Alice to Ms. Dalrymple's house several times to stay without telling her Alice had lice. During a period of several years, Alice was sent home by her school ten times each year with lice. When appellant would bring Alice to stay with her aunt, Alice would "go straight to the trash can because she knew she can get food out of there." *Page 7 
 {¶ 21} When Alice came to live with her aunt in April 2004, Alice was angry, aggressive, and withdrawn. Alice's aggression would increase prior to visitation with her mother, and Alice needed to be reassured she was not being returned to appellant before visiting with her. Alice's behavior has greatly improved since Ms. Dalrymple told her she would not have to go back with her mother. Alice and her aunt have a strong bond and she would like to adopt Alice. Alice's father is Ms. Dalrymple's brother. He told her he cannot care for Alice and consented to her adopting the child.
 {¶ 22} Psychologist Janeen Carrell, Ph.D., testified she tested appellant and diagnosed her with mild mental retardation (her I.Q. being 66), dependent personality disorder, compulsive personality disorder, and moderate clinical depression. She said effective parenting would be difficult for appellant due to her personality disorders and diminished cognitive capacity. Dr. Carrell also observed that appellant is more concerned about herself than helping Alice.
 {¶ 23} The parties stipulated the guardian ad litem Joanne Brady's report should be submitted after the hearing. In her report, Ms. Brady stated that while in appellant's custody, appellant hit and yelled at Alice and Thomas constantly. Appellant gave Thomas the wrong medication. She did not keep proper food in the house and sent Alice to school dirty and hungry.
 {¶ 24} Ms. Brady stated that sexual abuse by appellant's former boyfriend was indicated, but could not be definitively proven due to Alice's mental condition. Appellant refused to take her medication for anxiety and depression. She said that due to appellant's personality disorders, mental retardation, and other problems, appellant cannot now or in the future function as a parent or provide proper care for Alice. *Page 8 
Further, due to these problems, appellant cannot protect Alice from her predatory boyfriends. Appellant has not made any progress on her case plan. She is not in counseling. She lives with a man who routinely throws her out when they have a fight. She refuses to have a payee for her social security income, and her boyfriend handles her money.
 {¶ 25} Ms. Brady stated that Alice has made great progress with her aunt. Alice; is secure and happy with her, and wishes to remain with her in her home. Ms. Dalrymple is committed to Alice. Since Alice has been in the custody of her aunt, Alice is on time for school, clean and well-dressed. Further, Alice's academic and behavioral problems, speech, and social skills have greatly improved while she has been with her aunt. Ms. Brady recommended that Alice be placed in the permanent custody of appellee for adoption by her aunt.
 {¶ 26} The trial court rendered its decision on February 6, 2006, terminating the parental rights of appellant and Alice's father and granting permanent custody to appellee. Appellant appealed the trial court's judgment to this court in In re Kangas, 11th Dist. No. 2006-A-0010, 2006-Ohio-3433 ("Kangas I"). We reversed and remanded the matter for the limited purpose of allowing appellant to cross-examine the guardian ad litem concerning her report and to present rebuttal evidence concerning the report.
 {¶ 27} On November 2, 2006, pursuant to our remand, the trial court conducted a hearing. At the hearing Ms. Brady testified that since her appointment as guardian ad litem in 2005, she has never been able to reach appellant. She telephoned appellant several times and left messages, but appellant never returned any of her calls. Ms. *Page 9 
Brady attempted to attend visitation between mother and daughter, but there were so many times appellant failed to show up, it was impossible for her to do so.
 {¶ 28} She further testified that appellant telephoned Alice at her aunt's house sporadically, but when she did, she would call at unreasonably late hours at night and would often discuss inappropriate topics with Alice, such as incidents of domestic violence between appellant and her boyfriends, which would upset the child. Between November 2005 and November 2006, appellant visited Alice only twice, and these visits occurred between June 2006 and November 2006. Thus, between November 2005 and June 2006, appellant had no visitation with Alice.
 {¶ 29} Ms. Brady testified appellant made no progress on her case plan in two and one-half years. Alice has stated she is afraid she will be returned to appellant.
 {¶ 30} In contrast, Ms. Brady testified that Alice's aunt has had the child for several years and is doing an excellent job with her. Ms. Dalrymple would like to adopt Alice. The child has a strong bond with her aunt, and relies on her for everything. Ms. Dalrymple is committed to providing Alice with a stable and loving home environment.
 {¶ 31} Ms. Brady testified that Alice requires that her medicines be regulated. She said appellant is critical and demeaning of Alice, and does not have the mental capacity to understand Alice's special needs.
 {¶ 32} Ms. Brady stated her recommendation of permanent placement with appellee is stronger now because of appellant's lack of progress on her case plan and the continued domestic violence between appellant and her boyfriends.
 {¶ 33} Appellant's testimony at the hearing demonstrated she has severe mental limitations and is not capable of providing care for herself, let alone her special needs *Page 10 
child. She is not employed. She does not drive and does not have a driver's license. Her boyfriend is not employed and is married to another woman. He has a one-bedroom apartment with one couch/bed.
 {¶ 34} With respect to her financial condition, appellant testified she receives "$13,000" per month in social security benefits. At the hearing, the following exchange took place between the court and appellant:
 {¶ 35} "THE COURT: Miss Snyder, do you know what's in your savings account, what the balance is?
 {¶ 36} "FREDRICA SNYDER: I owe the bank $124 and I'm paying them bimonthly, and I'm paying them-
 {¶ 37} "THE COURT: No. No. You have a savings account you said?
 {¶ 38} "FREDRICA SNYDER: Right now, I don't have nothing in it until I get a check on the 3rd.
 {¶ 39} "THE COURT: What did you do with the check you got last month?
 {¶ 40} "FREDRICA SNYDER: Used some of that money on my kids.
 {¶ 41} "THE COURT: 13,000?
 {¶ 42} "FREDRICA SNYDER: Yep. And I don't blow my money. I was saving money. I had saved $250 last month and I put it aside for food, groceries, and everything, and my bills.
 {¶ 43} "THE COURT: You spent $13,000 on food, groceries, and bills?
 {¶ 44} "FREDRICA SNYDER: And I had medical bills.
 {¶ 45} "THE COURT: Last month?
 {¶ 46} "FREDRICA SNYDER: Yes. And I had medical bills on my own. *Page 11 
 {¶ 47} "THE COURT: So, you have $250 of that left over?
 {¶ 48} "FREDRICA SNYDER: Well, I paid on AC — paramedic bills I owed and-
 {¶ 49} "THE COURT: How much were they?
 {¶ 50} "FREDRICA SNYDER: Enough money, over a thousand some dollars.
 {¶ 51} "They told me to make $20 a monthly [sic] payment. I pay, you know, monthly payments."
 {¶ 52} Appellant admitted she has not been in counseling, as required by her case plan, since September, 2005, fourteen months prior to the hearing on remand. She insisted repeatedly that she cannot continue counseling because she owes $75 to her counselor, despite her testimony that she receives $13,000 per month.
 {¶ 53} Appellant conceded that prior to the hearing in September 2005, she had missed many visits with Alice, and that since September 2005, she has only seen her twice. Appellant further conceded that when she had custody of Alice, she had behavioral problems and appellant would often bring Alice to school late. She admitted that Alice's behavior and health have improved since she has been with her aunt.
 {¶ 54} In the court's judgment, dated November 7, 2006, the court found Alice is making great progress in the custody of Ms. Dalrymple. The court also found appellant does not have the ability, intellect, or desire to care for Alice. Appellant is still unemployed; has no driver's license, car, or housing; and has failed to comply with her case plan. The court noted that since the last hearing, the guardian ad litem is even more firm in her belief that permanent custody is in Alice's best interest. The court reaffirmed its February 6, 2006 judgment, which granted appellee's motion for *Page 12 
permanent custody. Appellant now purports to appeal from both judgments, asserting the following assignments of error:
 {¶ 55} "[1] THE JOURNAL ENTRY TERMINATING MS. SNYDER'S PARENTAL RIGHTS WAS FACIALLY DEFECTIVE BECAUSE OF THE TRIAL COURT'S FAILURE TO DISCUSS ALL FIVE FACTORS FROM R.C. 2151.414(D).
 {¶ 56} "[2] THE TRIAL COURT ERRED IN FINDING THAT GRANTING PERMANENT CUSTODY TO THE CSB WAS IN THE BEST INTEREST OF THE CHILD WHEN THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE"
 {¶ 57} Before a juvenile court can terminate parental rights and award to a state agency permanent custody of a child, it must find by clear and convincing evidence that: (1) the child has been in the temporary custody of the agency for at least twelve months of the prior twenty-two month period and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis of the factors listed at R.C. 2151.414(D). In re C.F. and C.F., 9th Dist. No. 02CA008084, 2002-Ohio-6113, 2002 Ohio App. LEXIS 5955, *4.
 {¶ 58} R.C. 2151.414 provides in relevant part:
 {¶ 59} "(B) * * * the court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody. * * *.
 {¶ 60} "* * * *Page 13 
 {¶ 61} "(D) In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 62} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 63} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 64} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period * * *;
 {¶ 65} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 66} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 67} Appellant argues that the trial court's two judgments are legally insufficient because they do not address some of the five factors listed at R.C. 2151.414(D) in making the determination that permanent placement is in the best interest of the child. Specifically, appellant claims the court did not consider: (1) the child's relationship with her mother; (2) the wishes of the child concerning placement; and (3) whether any of the factors listed in R.C.2151.414(E)(7) to (11) apply.
 {¶ 68} We have held that the provisions of R.C. 2151.414(D) are mandatory and must be strictly observed. In re Kelley, 11th Dist. No. 2002-A-0088, 2003-Ohio-194, *Page 14 
at ¶ 24. Further, the failure to discuss each of the factors set forth at R.C. 2151.414(D) in determining the best interest of the child is prejudicial error. In re Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, *13.
 {¶ 69} The trial court considered the statutory factors in its February 6, 2006 judgment. This assignment of error is therefore effectively directed only at that judgment. As noted supra, appellant appealed the trial court's February 6, 2006 judgment entry, and in so doing, failed to challenge items (1) and (3), but did challenge item (2), i.e., the wishes of the child concerning placement. Because these issues either were or could have been challenged in her prior appeal, this argument is barred by res judicata.
 {¶ 70} The doctrine of res judicata has two aspects: claim preclusion and issue preclusion. Grava v. Parkman Twp., 73 Ohio St.3d 379, 380,1995-Ohio-331. As to the claim preclusion aspect, this doctrine provides that an existing, final judgment between the parties to litigation bars all claims which were litigated or could have been litigated in that lawsuit from being relitigated in a later action. Grava, supra, at 381. The issue preclusion aspect, referred to as collateral estoppel, precludes the relitigation of issues actually determined between the parties in a prior action from being relitigated in a second action.Grava.
 {¶ 71} This doctrine has been held to apply to appellate proceedings in both criminal and civil cases. In State v. Beckwith (Mar. 2, 2001), 8th Dist. No. 75927, 2001 Ohio App. LEXIS 959, the court held that errors that were previously raised or could have been raised through an appeal are barred from further review based upon res *Page 15 
judicata. Id. at *2; see, also, State of Ohio ex rel. G M Tanglewoodv. Desiderio, 11th Dist. No. 2003-G-2497, 2004-Ohio-5309.
 {¶ 72} In Hospodar v. Marotta (Nov. 22, 1991), 11th Dist. No. 91-L-010, 1991 Ohio App. LEXIS 5576, *4, we cited, with approval, the holding of the Ohio Supreme Court in Burton, Inc. v. Durkee (1954),162 Ohio St. 433, 438, where the court held:
 {¶ 73} "`* * * Where a second action or a retrial of an action is predicated on the same cause of action and is between the same parties as the first action * * *, a final judgment of an appellate court in the former action * * * is conclusive in the second action * * * as to every issue which was or might have been presented and determined in the former instance.'"
 {¶ 74} Our review of the court's judgment of February 6, 2006 reveals that the court discussed each of the five statutory factors in that entry. This case was remanded to allow appellant to cross-examine the guardian ad litem, not for the court to address some deficiency in its findings. Appellant's argument that the court's judgment entry is defective because the court did not discuss each of the statutory factors could have been made in the first appeal. However, except for the factor concerning the child's wishes, appellant failed to do so. For the reasons set forth herein, appellant is barred by res judicata from asserting the alleged insufficiency of the prior judgment in this appeal.
 {¶ 75} With this in mind, appellant argues that, while the court discussed the relationship between Alice and her aunt in the entry, it did not discuss Alice's relationship with her mother. This argument is barred by res judicata because appellant could have but failed to raise it in her previous appeal. However, even if we could *Page 16 
legitimately reach the issue, appellant's argument is contradicted by the judgment entry. The court specifically referenced Alice's relationship with appellant in its February 6, 2006 entry. The court found that appellant's visitation with Alice was inconsistent and sporadic. It found appellant only attended a fraction of her scheduled visits with Alice. The court found appellant did not have any contact with Alice from March 2005 until June 2005. Finally, the court found that appellant had abandoned Alice.
 {¶ 76} Next, appellant's argument that the court failed to discuss Alice's wishes concerning placement in its entry is also barred by res judicata. In its February 6, 2006 entry, the court noted that the guardian ad litem stated it would be in Alice's best interest to be placed in appellee's permanent custody. We held in Kangas I, that "[Alice's] opinion [regarding custody] is consistent with the guardian ad litem's recommendation that Fredrica's parental rights be terminated. Id. at ¶ 45. We also held: "Alice's wishes regarding her custody were evidenced by the guardian ad litem's report * * *." Id. at ¶ 46. Therefore, our holding in the previous appeal is res judicata and binding in this appeal. Hopkins, supra.
 {¶ 77} Finally, we do not agree with appellant's assertion that the court did not determine whether any of the R.C. 2151.414(E)(7) to (11) factors was present. While this argument is also barred by res judicata since it could have been but was not raised in the prior appeal, it is contradicted by the court's February 6, 2006 entry. In that entry the court expressly found that Alice's mother had abandoned her. One of the alternatives under this factor is that the parent has abandoned the child. R.C. 2151.414(E)(10).
 {¶ 78} Appellant's first assignment of error is without merit. *Page 17 
 {¶ 79} Under her second assignment of error, appellant argues the court's finding that the award of permanent custody was in Alice's best interest was against the manifest weight of the evidence. We do not agree.
 {¶ 80} In determining whether a judgment is against the manifest weight of the evidence in a civil case, the standard of review is the same as in a criminal case. Davis v. DiNunzio, 11th Dist. No. 2004-L-106, 2005-Ohio-2883; accord, In re Lavery, 9th Dist. No. 20852, 2002-Ohio-3031, at ¶ 6.
 {¶ 81} In a civil case, an appellate court will not reverse a judgment as being contrary to the weight of the evidence as long as there is some competent, credible evidence supporting the judgment. Vogel v.Wells (1991), 57 Ohio St.3d 91, 96. Even if we do not agree with the trial court or might have found differently, we cannot substitute our judgment for that of the trial court. We must give deference to the trier of fact because it is best able to observe the witnesses and their demeanor and to determine their credibility. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 82} In determining whether the judgment is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of the witnesses. The court determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997),78 Ohio St.3d 380, 387. *Page 18 
 {¶ 83} Thus, before an appellate court can reverse a judgment as against the manifest weight of the evidence in a civil case, the court must determine whether the trier of fact, in resolving evidentiary conflicts and determining the credibility of witnesses, clearly lost its way and created a manifest miscarriage of justice. Lavery, supra, at ¶ 7.
 {¶ 84} The standard of review in child custody cases has been stated as follows:
 {¶ 85} "The standard of review for weight of the evidence issues, even where the burden of proof is `clear and convincing,' retains its focus upon the existence of some competent, credible evidence. In other words, when reviewing awards of permanent custody to public children services agencies, judgments supported by some competent, credible evidence must be affirmed. If the record shows some competent, credible evidence supporting the trial court's grant of permanent custody to the county, * * * we must affirm that court's decision, regardless of the weight we might have chosen to put on the evidence." (Citations omitted.) In reP.R., 8th Dist. No. 79609, 2002-Ohio-2029, at ¶ 15.
 {¶ 86} Every reasonable presumption must be made in favor of the judgment and the findings of fact of the juvenile court. Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19.
 {¶ 87} Clear and convincing evidence is the level of proof greater than a preponderance of the evidence, but less than the certainty of beyond a reasonable doubt. An appellate court reviews the record to determine whether sufficient evidence exists to meet the clear and convincing standard. Cross v. Ledford (1954), 161 Ohio St. 469. *Page 19 
 {¶ 88} In Kangas I, we held as follows: "[W]e find the trial court's judgment terminating Fredrica's parental rights to be correct and supported by the evidence presented thus far." Id. at ¶ 59. We also held that, because of our remand, appellant's argument that the judgment was against the manifest weight of the evidence was premature. On remand the trial court allowed appellant to cross-examine the guardian ad litem and to present rebuttal evidence. Following the hearing the trial court reaffirmed its February 6, 2006 judgment entry.
 {¶ 89} Appellant argues the trial court's finding that appellant abandoned Alice was not supported by the evidence. The trial court made this finding in its February 6, 2006 entry. Appellant challenged this finding in Kangas I, and we held this finding was supported by the record. Id. at ¶ 60. This finding is now res judicata and cannot be relitigated in this appeal. We do, however, note that this finding is supported by competent, credible evidence.
 {¶ 90} Appellant also argues the court's best interest determination was against the manifest weight of the evidence. The record reveals this finding is also supported by competent, credible evidence.
 {¶ 91} In weighing the evidence, the trial court obviously found appellee's witnesses to be more credible than appellant. After reviewing the record, we cannot conclude the trier of fact lost its way and created a manifest miscarriage of justice in making its findings. We further hold that the juvenile court did not act contrary to the manifest weight of the evidence. Finally, we hold that appellee presented sufficient evidence to prove these findings by clear and convincing evidence. Based upon this *Page 20 
record, it would be difficult to imagine a more compelling case for terminating parental rights and awarding permanent custody to the children services board.
 {¶ 92} Appellant's second assignment of error is without merit.
 {¶ 93} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.
 WILLIAM M. O'NEILL, J., DIANE V. GRENDELL, J., concur. *Page 1