[Cite as *Stalloy Metals, Inc. v. Kennametal, Inc.*, 2014-Ohio-4134.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STALLOY METALS, INC., | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-G-3151** |
| KENNAMETAL, INC., | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 10 M 000478.

Judgment: Affirmed.

*Charles P. Royer,* McCarthy, Lebit, Crystal & Liffman Co., L.P.A., 101 West Prospect Avenue, Suite 1800, Cleveland, OH 44115 (For Plaintiff-Appellant).

*Mark S. Fusco* and *William R. Hanna,* Walter & Haverfield LLP, The Tower at Erieview, 1301 E. Ninth Street, Suite 3500, Cleveland, OH 44114 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Stalloy Metals, Inc., appeals the judgment of the Geauga County Court of Common Pleas, following this court's remand, in which the trial court found in favor of appellee, Kennametal, Inc., on Stalloy's breach-of-contract claim. At issue is whether the trial court's finding that Stalloy failed to prove its entitlement to damages was against the manifest weight of the evidence. For the reasons that follow, we affirm.

**{¶2}** On May 3, 2010, Stalloy filed a complaint against Kennametal alleging breach of contract. Stalloy alleged that Kennametal had agreed to purchase 120,000 pounds of scrap carbide from it at $12.25/pound for a total price of $1,470,000. Stalloy alleged that Kennametal wrongfully rejected the scrap and breached the parties' contract. Stalloy alleged it attempted to mitigate its damages by reselling the scrap. However, based on changed market conditions, Stalloy was forced to resell it at an average price of $7.124/pound totaling $854,880, for a loss of $615,120, for which it sought an award of damages. Stalloy filed an answer denying the material allegations of the complaint. The case proceeded to bench trial.

**{¶3}** Stalloy's president, Suger Peck, testified that Stalloy had 120,000 pounds of carbide it wanted to sell to Kennametal. On October 17, 2008, she called Kennametal's buying agent, David Burns, and asked if Kennametal was interested in buying it. He said Kennametal was interested and offered to buy it at a price of $12.25/pound, which Ms. Peck accepted.

**{¶4}** Ms. Peck was familiar with Kennametal's terms and conditions regarding shipping, which required that no more than 1,000 pounds of carbide be shipped in any one container. She told Mr. Burns that the material was already packaged in 2,000-pound containers, and asked if she needed to repackage it in 1,000-pound containers. Mr. Burns said it would be all right to send it in the 2,000-pound containers. Later that day, Mr. Burns sent Ms. Peck a confirmation order by e-mail, stating that Kennametal had purchased 120,000 pounds of carbide at $12.25/pound. Ms. Peck sent an e-mail to him, stating that Kennametal's confirmation order had been received and was accepted.

{¶5}  Soon after Stalloy shipped the scrap to Kennametal, the price of scrap carbide dropped precipitously.  On October 22, 2008, Mr. Burns sent an e-mail to Ms. Peck stating that Kennametal was no longer accepting shipments this large so it was sending the carbide back to Stalloy.  One week later, on October 29, 2008, Kennametal's agent, Tom Barrett, sent a letter to Ms. Peck stating that Kennametal did not accept Stalloy's shipment because it did not comply with the provision in Kennametal's terms and conditions requiring that no more than 1,000 pounds of carbide be shipped in any one container.  This was the first time Ms. Peck was informed there was a problem with the weight of the containers.

{¶6}  A few days later, Ms. Peck met with Mr. Barrett.  She told him that Mr. Burns had said the drums were fine the way they were.  He asked her if she had it in writing and she said she did not.  He said, "well, then you have no proof."

{¶7}  Thereafter, between November 2008 and January 2009, Stalloy resold the material to another purchaser in a series of private sales at an average price of $7.12/pound for a total of $854,880.

{¶8}  Following the trial, the court entered judgment in favor of Kennametal on Stalloy's complaint. The court found that, due to a no-oral modification clause in Kennametal's terms and conditions, the parol evidence rule prevented Stalloy from relying on the parties' oral agreement to vary the 1,000-pound weight limitation. Thus, the court found it could not consider the oral agreement between Ms. Peck and Mr. Burns to vary the weight limit. The court found that since the parol evidence rule prevented any modification of the weight limit, Kennametal was entitled to reject Stalloy's shipment and did not breach the parties' contract.

{¶9} Stalloy appealed the trial court's judgment. In *Stalloy Metals, Inc. v. Kennametal, Inc.*, 11th Dist. Geauga No. 2012-G-3054, 2012-Ohio-5597 ("*Stalloy I*"), this court held the trial court did not err in finding that the parol evidence rule prevented Stalloy from relying on the parties' oral agreement to modify the weight limit. *Id.* at ¶48. However, this court held the trial court erred in not considering that agreement on the issue of whether Kennametal waived its right to enforce the requirement of a writing to modify the weight limit. *Id.* at ¶54. This court outlined the evidence presented at trial on the issue of waiver, and remanded the case to the trial court solely to consider that evidence in determining whether Kennametal waived the requirement of a writing to modify the weight limit. *Id.* at ¶66. Kennametal filed a notice of appeal of this court's judgment in *Stalloy I*, but the Supreme Court of Ohio did not allow such appeal at 134 Ohio St.3d 1489, 2013-Ohio-902.

{¶10} On remand, the trial court entered two orders. First, on April 1, 2013, the court found that, based on those parts of the record identified by this court in *Stalloy I*, Stalloy reasonably relied on Kennametal's (via Mr. Burns) representation that it would be acceptable for Ms. Peck to ship the carbide in 2,000-pound drums. Thus, the court found that Kennametal waived its requirement that scrap not be shipped in containers weighing more than 1,000 pounds. As a result, the court found that Kennametal wrongfully rejected Stalloy's shipment. The court entered judgment in favor of Stalloy in an amount to be established by the court from its review of the record. The court ordered the parties to submit memoranda regarding the proper amount of damages.

{¶11} In its initial brief, Stalloy argued it should be awarded the difference between the contract price ($1,470,000) and the amount it received from reselling the

4

scrap ($854,880), i.e., $615,120, for its damages.  In opposition, Kennametal in its brief argued that Stalloy was barred from receiving this amount because Stalloy did not resell the scrap in compliance with Section 2706 of Pennsylvania's version of the Uniform Commercial Code.  According to that provision, in order for a seller to recover damages for breach of contract by the buyer based on the difference between the contract price and the resale price received in a private sale, as in this case, the seller must first give notice to the buyer of the seller's intent to resell, which Stalloy failed to do.  Thereafter, Stalloy filed a reply brief in which, for the first time, it argued that even if it did not give notice of sale to the buyer and was not entitled to resale damages under Section 2706, it was entitled to damages based on the difference between the contract price and the market value of the scrap pursuant to Section 2708 of the U.C.C.  Stalloy did not offer any credible evidence as to fair market value at the time tender was rejected.

{¶12}  After considering the parties' briefs, on July 3, 2013, the trial court entered final judgment.  The court found that because Stalloy did not give notice of its intent to resell the scrap, it could not use Section 2706 to calculate damages based on the amount received from reselling the scrap.  The court noted that in an effort to avoid the harsh result of its failure to comply with this provision, Stalloy argued that under Section 2708, it was entitled to damages based on the difference between the contract price and the market value of the scrap.  However, the court found that Stalloy made no such claim at trial.  Further, the court found that no credible evidence was presented at trial as to the market value.  The court found that since Stalloy was unable to show it was entitled to damages under either Code section, the court amended its judgment to show that judgment was entered in favor of Kennametal.

5

**{¶13}** Once again, Stalloy appeals the trial court's judgment, this time asserting three assignments of error. Because the first two assignments of error are interrelated, they are considered together. They allege:

**{¶14}** "[1.] The Trial Court erred when it found that Plaintiff-Appellant failed to offer credible evidence of its market damages at the time of Kennametal's breach of contract.

**{¶15}** "[2.] The Trial Court erred when it found that Plaintiff-Appellant was barred from obtaining damages because it failed to give notice of a sale under UCC § 2-706."

**{¶16}** Appellant argues that, although it failed to give notice to Kennametal of its intent to resell the scrap, it was entitled to an award of damages using the difference between the contract price and the market price as the measure of damages. We do not agree.

**{¶17}** For the reasons set forth in *Stalloy I*, we apply Pennsylvania law in addressing the substantive issues and Ohio law in addressing procedural matters in Stalloy's appeal. *Id.* at ¶35; *see Lawson v. Valve-Trol Co.*, 81 Ohio App.3d 1, 4 (9th Dist.1991), citing *Howard v. Allen*, 30 Ohio St.2d 130 (1972).

**{¶18}** The interpretation of a statute is a question of law. *Wilson v. Transport Ins. Co.*, 2005 Pa. Super. 401, 889 A.2d 563, 570 (2005). "As with all questions of law, the appellate standard of review is de novo * * *." *In re Wilson*, 2005 Pa. Super. 211, 879 A.2d 199, 218 (2005). The goal in interpreting any statute is to ascertain and effectuate the intent of the General Assembly. *Cimino v. Valley Family Medicine*, 2006 Pa. Super. 342, 912 A.2d 851, 853 (2006). The plain language of a statute is the best indication of the legislative intent that gave rise to the statute. *Id*. When the language is clear and

6

unambiguous, we discern intent from the language alone. We must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage. *Id.*; *see* 1 Pa.C.S.A. § 1921(b).

**{¶19}** 13 Pa.C.S.A. § 2703(4) provides that where a buyer wrongfully rejects goods, the aggrieved seller may "[r]esell and recover damages as hereafter provided * * *."

**{¶20}** 13 Pa.C.S.A. § 2706(a) provides that the seller may resell the goods concerned and, upon resale, the seller may recover the difference between *the resale price* and the contract price. 13 Pa.C.S.A. § 2706(b) provides that resale may be at public or private sale. 13 Pa.C.S.A. § 2706(c) provides that where the resale is at private sale, the seller must give the buyer reasonable notice of his intention to resell.

**{¶21}** Alternatively, 13 Pa.C.S.A. § 2708 provides that the measure of damages for nonacceptance by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price. Unlike 13 Pa.C.S.A. § 2706, Section 2708 does not require the seller to give notice to the buyer of the seller's intent to resell the goods.

**{¶22}** Neither party cites any Pennsylvania case law addressing the interplay of these statutes. We note, however, that the courts of other states have analyzed them. "[T]he mandate of UCC § 2-706(3), that notice be provided to a buyer which has wrongfully revoked acceptance prior to effecting a private sale of goods so returned, is unequivocal when seeking to recover damages pursuant to UCC § 2-703(d). Recovery of the difference between the contract price and the amount recovered upon resale is unavailable to the seller upon failure to comply [with the notice requirement]." (Citations

7

omitted.) *Fuji Photo Film USA, Inc. v. Zalmen Reiss & Assoc., Inc.*, 31 Misc.3d 1240(A), 2011 N.Y. Misc. LEXIS 2803, *6. "The only alternative is to seek recovery pursuant to UCC §2-708 for 'the difference between the market price at the time and place for tender and the unpaid contract price.'" *Id.*, quoting U.C.C. Section 2-708; *accord Highway Sales, Inc. v. Blue Bird Corp.*, 504 F. Supp.2d 630, 647 (D. Minn.2007) ("[F]ailure to comply with § 2-706 deprives the seller of the measure of damages [under U.C.C. Section 2-706 based on the difference between the contract price and the amount recovered upon resale] and relegates him to that provided in Section 2-708 [based on the difference between the contract price and market value]"). "The burden, however, is upon the seller under Section 2-708 to establish the applicable market [value] so as to demonstrate that the unnoticed private sale resulted in a fair price reflective of the actual value." (Citations omitted.) *Fuji Photo Film*, *supra.*

**{¶23}** In Pennsylvania, the term "market value" is defined as "the price which a purchaser, willing but not obligated to buy, would pay an owner, willing but not obligated to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Buhl Found. v. Board of Property Assessment, Appeals and Review*, 407 Pa. 567, 180 A.2d 900, 902 (1962).

**{¶24}** Thus, pursuant to Sections 2706 and 2708 of Pennsylvania's Uniform Commercial Code, two alternative remedies are available to a seller of goods that are wrongfully rejected by the buyer and resold by the seller at private sale. If the goods are sold at private sale and the seller gave the buyer notice of its intent to resell the goods, the seller can recover damages based on the difference between the contract price and the resale price. In the alternative, if the goods are sold at private sale, but

8

the seller fails to give the buyer notice of its intent to resell the goods, the seller is limited in its recovery of damages to the difference between the contract price and the market value of the goods. Under the latter alternative, the seller has the duty to establish the market value of the goods.

**{¶25}** Here, it is undisputed that, following Kennametal's breach of contract, Stalloy resold the scrap at private sale, but did not give notice of that sale to Kennametal. Thus, Stalloy is not entitled to recover damages based on the price it received at private sale. In an effort to avoid this rule, Stalloy argues on appeal, as it did below, that it is entitled to recover the difference between the contract price and the market value.

**{¶26}** "It is well-settled in Ohio that a reviewing court will not consider issues which the appellant failed to raise in the trial court." *Fijalkovich v. W. Bishop Co.*, 123 Ohio App.3d 38, 43 (8th Dist.1997), citing *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41 (1975).

**{¶27}** Stalloy argues it did not waive the right to damages based on market value because its complaint for breach of contract was broad enough to encompass such damages. Further, Stalloy argues it presented evidence of market value at trial and the issue was therefore tried by implied consent.

**{¶28}** Stalloy argues that the trial court erred in finding no credible evidence was presented as to market value. However, the argument lacks merit because the trial court, as the finder of fact, was entitled to find, as it did, that Stalloy presented no credible evidence on the issue of market value.

9

**{¶29}** An appellate court will not reverse a judgment as being contrary to the weight of the evidence if it is supported by some competent, credible evidence. *In re Kangas*, 11th Dist. Ashtabula No. 2006-A-0084, 2007-Ohio-1921, ¶81. Even if we do not agree with the trial court, we cannot substitute our judgment for that of the trial court. *Id.* We must give deference to the trier of fact because it is best able to observe the witnesses and their demeanor and to determine their credibility." *Id.* In determining whether the judgment is against the weight of the evidence, the court, reviewing the entire record, weighs the evidence and considers the credibility of the witnesses. *Id.* at ¶82.

**{¶30}** In support of Stalloy's argument that it presented competent evidence of the market value of the scrap, it references the testimony of Ms. Peck concerning Stalloy Exhibit 4. That exhibit was a one-page document, entitled "Tungsten Carbide Scrap WC Inserts Prices in US$LB." It listed prices for scrap on various dates between August 2008 and May 2009. In explaining this document at trial, Ms. Peck testified as follows:

**{¶31}** Q. Would you take a look at Plaintiff's Exhibit 4, please?

**{¶32}** A. Yes.

**{¶33}** Q. Can you identify that for the record?

**{¶34}** A. This is a gauge. It is not like prices for gold or silver where it is exact. This is a gauge of pricing for tungsten carbide scrap during that time period.

**{¶35}** Q. During what time?

10

**{¶36}** A. Well, it starts in August of 2008, and it goes to May of 2009. And it goes from, if you look at the average, it goes from $10.75 a pound down to $4.75 a pound.

**{¶37}** Q. What happened to the price of carbide after you sold the 120,000 pounds to Kennametal?

**{¶38}** A. It dropped like a rock.

**{¶39}** Q. Do you know why?

**{¶40}** A. There were many different factors involved. A lot of it had to do with the Chinese. A lot of it had to do with the economy. Everything was just starting to drop. I don't know.

**{¶41}** Thus, contrary to Stalloy's argument, Ms. Peck did not testify that the prices listed on this chart reflected the market value of scrap. Further, on its face, the chart does not purport to show the market value as of the dates listed, but, rather, shows a "low price," a "high price," and a "mean price" for certain listed dates. While Stalloy argues on appeal that the chart is used as "a standard in the industry," Ms. Peck did not testify to that effect. Ms. Peck testified that the chart was not intended to provide the exact price of scrap. Instead, she said it was meant only to provide a gauge or estimate of the price of carbide for the relevant dates noted on the chart. In addition, Ms. Peck did not provide the source of this chart or the prices listed thereon. Nor did she testify as to how the prices are obtained. Further, she did not testify that the chart is considered reliable by her or the industry. In any event, Ms. Peck did not use the chart to demonstrate the market value of the scrap. To the contrary, she used it to

show that the true reason Kennametal rejected Stalloy's shipment was the drop in the price of scrap, not the weight of the shipping containers.

**{¶42}** We further note that under 12 Pa.C.S.A. Section 2708, Stalloy was required, but failed, to prove the market value of the scrap as of the date of its tender. Stalloy tendered the scrap to Kennametal on October 22, 2009. After Kennametal rejected it, Stalloy resold most of the scrap two months later in January 2009. Thus, even if the resale price of the scrap represented its market value, because the scrap was resold two months after the scrap was tendered, the resale price (in January 2009) did not necessarily reflect its market value when it was tendered (in October 2008). This is particularly true in light of the continuous drop in the price of scrap between August 2008 and January 2009.

**{¶43}** We therefore hold the trial court's finding that Stalloy failed to present any credible evidence of the market value of the scrap was not against the manifest weight of the evidence.

**{¶44}** Further, Stalloy argues that because Kennametal did not cross-examine Ms. Peck on her "market value testimony" or present countervailing evidence on this issue, the trial court's judgment was against the manifest weight of the evidence. However, Ms. Peck did not offer any testimony regarding the market value of the scrap so there was nothing for Kennametal to discredit.

**{¶45}** Moreover, Stalloy argues the trial court improperly disregarded the testimony of Kennametal's employees that the price of carbide was $10 to $12 a pound in August 2008; that the price "dropped big" during the week of October 20, 2008; and that by the end of the year the price dropped to $2 to $4 a pound. However, the fact

12

that the price of scrap dropped in this four-month period is no evidence of its market value.

**{¶46}** In addition, Stalloy argues that the amount it realized from the resale of the scrap is evidence of the market value of the property so it was entitled to damages based on market value, even though it did not give Kennametal notice of its intent to resell the scrap. The trial court rejected this argument, finding that the amount realized by Stalloy from the resale of the scrap could not be bootstrapped to establish market value. The trial court did not err in making this finding in light of Stalloy's failure to present any evidence that the price obtained on resale represented the market value of the scrap.

**{¶47}** Stalloy's reliance on *B&R Textile Corp. v. Paul Rothman, Ltd.,* 101 Misc.2d 98, 420 N.Y.S.2d 609 (1979), is misplaced. In that case, the court held that market value may be proved by a resale of the rejected goods where the seller has taken proper measures to ensure as fair and reasonable a sale as possible. *Id.* at 100. The court in *B&R Textile* held that the resale price of the goods accurately reflected the market value because the goods were sold to several buyers at similar prices, which indicated there was an available market for the goods. *Id.* Here, virtually all the scrap was resold to only one purchaser in a series of private sales, and Stalloy presented no evidence that it took any measures to ensure that the sales were fair and reasonable or that there was an available market for the scrap.

**{¶48}** Further, Stalloy argues that a comparison of the prices it received on resale and the alleged market values reflected on Stalloy's chart shows that the resale prices were higher than the market value. Stalloy does not explain the legal significance

of this argument. However, it appears to be arguing that because it allegedly resold the scrap for more than its market value, the resale price was at least as much as the market value and it is thus entitled to the difference between the contract price and the market value. However, because Stalloy failed to present any evidence that the chart showed the market value of the scrap, it is impossible to say whether the prices received by Stalloy on resale were more or less than market value.

{¶49} We therefore hold the trial court's judgment finding that Stalloy was not entitled to the difference between the contract price and the market value was not against the manifest weight of the evidence.

{¶50} Stalloy's first and second assignments of error are overruled.

{¶51} For its third and final assignment of error, Stalloy alleges:

{¶52} "The Trial Court erred when it failed to award plaintiff-Appellant prejudgment interest."

{¶53} The right to prejudgment interest on the principal amount of the judgment entered on a contract claim is a matter of law that we review de novo. *Cresci Constr. Servs. v. Martin*, 2013 Pa. Super. 66, 64 A.3d 254, 258 (2013); *accord Dwyer Elec. v. Confederated Builders*, 3d Dist. Crawford No. 3-98-18, 1998 Ohio App. LEXIS 5490, *11 (Oct. 29, 1998).

{¶54} Because the trial court found that no amount of damages was owed to Stalloy and, further, because this finding was supported by credible evidence, Stalloy was likewise not entitled to prejudgment interest.

{¶55} Appellant's third assignment of error is overruled.

14

{¶56} For the reasons stated in this opinion, appellant's assignments of error lack merit and are overruled. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.