HIGHWAY SALES, INC., and
Donald Oren, Plaintiffs,

v.

BLUE BIRD CORPORATION and Thermo Leasing Corporation, doing business as Shorewood RV Center, Defendants.

No. 05–CV–1652 (PJS/JJG).

United States District Court,
D. Minnesota.

Aug. 21, 2007.

Brian A. Wood and Kevin J. Rodlund, Lind, Jensen, Sullivan & Peterson, PA, for plaintiffs.

Edward H. Wasmuth, Jr., Smith, Gambrell & Russell, LLP, Atlanta, GA; Mark S. Enslin and Randall J. Pattee, Lindquist & Vennum, PLLP, for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PATRICK J. SCHILTZ, District Judge.

This matter is before the Court on the parties' objections to Magistrate Judge Jeanne J. Graham's April 2, 2007 Report and Recommendation ("R & R") [Docket No. 105]. In her R & R, Judge Graham recommends that defendants' motion for summary judgment [Docket No. 65] be granted in part and denied in part. As to most of plaintiffs' claims, the Court agrees with Judge Graham's recommended disposition. The Court finds, however, that defendants are entitled to summary judgment on all of plaintiffs' claims, not just on those claims as to which Judge Graham recommends summary judgment. Accordingly, the Court overrules plaintiffs' partial objection [Docket No. 107], sustains defendants' objection [Docket No. 108], and adopts Judge Graham's R & R to the extent that it is consistent with this opinion.

### I. BACKGROUND

The key facts are thoroughly described in Judge Graham's R & R. R & R at 1–4. The Court will summarize them only briefly here. As did Judge Graham, the Court will resolve any disputes and make all reasonable inferences in plaintiffs' favor.

Plaintiff Donald Oren runs plaintiff Highway Sales, Inc., a company that sells and leases highway tractors (i.e., the front portion of a tractor-trailer). Rodlund Aff. Ex. I ("Oren Dep.") at 7–8 [Docket No. 84]. In early 2003, Oren decided to replace his 1977 General Motors recreational vehicle ("RV") with a new luxury RV manufactured by defendant Blue Bird Corporation. Id. at 17–19. In late July or early August 2003, Highway Sales purchased, for Oren's use, a Blue Bird Wanderlodge M380 from defendant Thermo Leasing Corporation, a Blue Bird dealer that does business under the name Shorewood RV.[1] Oren Dep. Exs. 1 & 5. Highway Sales paid almost $340,000 for the RV, a 38–foot vehicle built on a bus chassis. Oren Dep. at 21–22; id. Ex. 5.

---

1. Following the parties' lead, the Court will refer to defendant Thermo Leasing as "Shorewood RV." Because plaintiff Highway Sales, not Oren, purchased the RV from Shorewood RV, the Court will generally refer to plaintiffs collectively as "Highway Sales."

As Judge Graham explains, numerous defects in the RV surfaced in the months following the sale. *See* R & R at 1–2 (citing record). Oren returned the RV to Shorewood RV for repairs on several occasions. *Id;* Oren Dep. at 24–32, 54–60; *id.* Exs. 1 & 10. By early July 2004, however, Oren had given up hope that the RV could ever be put in satisfactory working condition. Oren Dep. at 62–64. He cleaned out his personal belongings and, on July 2, 2004, dropped off the RV at Shorewood RV's sales lot. Oren Dep. at 62; Purvis Aff. Ex. B at 1 [Docket No. 12]. As Oren said at his deposition, at that point, "I was just done with it." Oren Dep. at 63. About a week later, on July 8, Oren wrote to Blue Bird requesting a refund of the RV's purchase price and stating:

> After almost a year of continued problems with this motor home [i.e., the Wanderlodge M380 at issue in this suit], I have come to three conclusions. First, the Model M380 was released before it had been properly designed, tested, and debugged. Second, Shorewood RV is a terrific dealer for you, but even they could not overcome the inherent problems in the Model M380. Third, I have run out of patience, confidence, and trust that the problems can be fixed in a reasonable time, and I request that you return my purchase price....

> On July 2, 2004, after the engine batteries once again died, I removed all of my personal belongings and returned the coach to the dealer. This was the final event—the last straw....

> Suffice it to say that I am out of patience, and that both of our lives will be made easier if you will simply authorize a repurchase of the coach at its original cost. This coach simply needs to be permanently recalled until major corrections are made....

> I'm not interested in further retrofits, patches, or excuses. I will never take this coach back.

Purvis Aff. Ex. B at 1–2.

Blue Bird refused to give Highway Sales a refund. Oren Dep. at 84; *id.* Ex. 16. In mid-September 2004, Oren and Shorewood RV partially executed a consignment agreement under which Shorewood RV agreed to sell the Wanderlodge M380 on Highway Sales's behalf. Oren Dep. at 64–68; *id.* Ex. 12. Throughout the remainder of 2004, Oren corresponded with Blue Bird, raising the specter of legal action and continuing to seek a refund. *Id.* Exs. 3, 22–23. Blue Bird disputed Oren's claims about the condition of the RV and continued to refuse to issue a refund. *Id.* Ex. 24.

In February 2005, Oren agreed to sell the RV to a Florida-based dealer, Parliament Coach. Oren Dep. at 69–71; *id.* Exs. 30–31. The sale took place some time between then and April 2005. Oren Dep. at 114–16; Rodlund Aff. Ex. E at 2, Ex. F at 5. Oren admits that he did not give Blue Bird notice before selling the RV to Parliament Coach. Oren Dep. at 71–72, 116.

On July 15, 2005, Highway Sales sued defendants in state court. Defendants removed the case to this Court under 28 U.S.C. § 1441(a).

## II. DISCUSSION

### A. *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute over a fact is "material" only if its resolution might

affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party. *Ohio Cas. Ins. Co. v. Union Pac. R.R.,* 469 F.3d 1158, 1162 (8th Cir.2006). In considering a motion for summary judgment, a court must assume that the nonmoving party's evidence is true. *Taylor v. White,* 321 F.3d 710, 715 (8th Cir.2003).

### B. Breach of Warranty

In Count 1 of its second amended complaint, Highway Sales alleges that Blue Bird breached the implied warranties of merchantability and of fitness for a particular purpose, as well as applicable express warranties. Blue Bird argues that all of Highway Sales's breach-of-warranty claims are untimely. Def. Mem. Supp. Mot. S.J. at 4–10 ("Def.S.J.Mem.") [Docket No. 72].

The parties agree that the governing sales contract in this case incorporates a "Limited Warranty" that sets forth Blue Bird's warranty responsibilities.[2] Def. S.J. Mem. at 4–6; Pl. Resp. Def. Mot. S.J. at 13 ("Pl.S.J.Resp.") [Docket No. 85]. That Limited Warranty includes a contractual limitations period that provides: "Any suit alleging a breach of this limited warranty of or any other alleged warranty must be filed within one year of breach." Purvis Aff. Ex. A.

The parties do not dispute that the one-year limitations period in the Limited Warranty applies to all of Highway Sales's breach-of-warranty claims. They do, however, dispute whether the period had run by July 15, 2005, the date this suit was filed in state court. The parties disagree about when Highway Sales's breach-of-warranty claims accrued, and they disagree about whether the limitations period was tolled by Blue Bird's actions. Because the law governing accrual dates differs for implied-warranty claims and express-warranty claims, the Court considers each type of claim separately.

#### 1. Implied–Warranty Claims

■ Section 2–725(2) of the Uniform Commercial Code ("UCC") establishes when a claim for breach of warranty accrues:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Minn.Stat. § 336.2–725(2).[3] Because Minnesota courts have held that implied warranties cannot "explicitly extend[ ] to future performance," a claim for breach of

---

**2.** The Limited Warranty provides that "[a]ll rights under this limited warranty shall be governed by the law of Georgia, U.S.A." Purvis Aff. Ex. A. Defendants assert, however, that Minnesota law and Georgia law are identical with respect to limitations periods for breach-of-warranty claims. Def. S.J. Mem. at 5 n. 3. Plaintiffs do not dispute this assertion, and both parties have briefed the contract and warranty issues in this case with reference to Minnesota law. Therefore, with the parties' acquiescence, the Court will apply Minnesota

law to plaintiffs' claims for breach of warranty and breach of contract.

**3.** Following a practice sometimes used by the Minnesota Supreme Court, this Court will generally refer to provisions of Minnesota's UCC by their UCC section number. *See Chemlease Worldwide, Inc. v. Brace, Inc.,* 338 N.W.2d 428, 432 n. 1 (Minn.1983). Minnesota has codified the UCC in Chapter 336 of the Minnesota Statutes. The Court follows Minnesota case law in interpreting the Minnesota UCC.

implied warranty accrues under § 2–725(2) "when tender of delivery is made." *See Nelson v. Int'l Harvester Co.*, 394 N.W.2d 578, 582 (Minn.App.1986) ("an implied warranty by its very nature cannot contain such an explicit extension [to future performance]"), *overruled on other grounds, Lloyd F. Smith Co. v. Den–Tal–Ez, Inc.*, 491 N.W.2d 11, 17 (Minn.1992); *see also Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 879 (8th Cir.2000) ("Implied warranties cannot, by their very nature, explicitly extend to future performance.").

In this case, the parties do not dispute that "tender of delivery" was made some time close to July 31, 2003. Def. S.J. Mem. at 7; Second Am. Compl. ¶ IV. This suit was not brought until almost two years later. Blue Bird therefore argues that Highway Sales's implied-warranty claims are untimely.

Highway Sales responds with two arguments. First, Highway Sales asserts that the parties contracted around the limitations period of § 2–725(2) by "providing that the statute of limitations on all warranties would run from the date of *discovery* of breach." Pl. S.J. Resp. at 20 (emphasis added); *see also* Pl. Partial Obj. to R & R at 2 [Docket No. 107]. Yet the contractual language on which Highway Sales relies—which Highway Sales quotes accurately in its brief, *see* Pl. S.J. Resp. at 20—provides simply that a suit "alleging a breach [of warranty] must be filed within one year of breach." (Emphasis added.) The word "discovery" is conspicuously absent from the contract. Highway Sales may wish that the contract provided that all breach-of-warranty claims accrue on *discovery* of breach—but wishing does not make it so. Highway Sales's claim for breach of implied warranties thus accrued on about July 31, 2003.

Second, Highway Sales asserts that the limitations period was tolled because Blue Bird repeatedly attempted and promised to repair the RV. The Court agrees with Judge Graham that even if Blue Bird's repair attempts and promises tolled the running of the limitations period for some period of time—which the Court assumes but does not decide—Blue Bird's actions did not toll the running of the limitations period sufficiently to save Highway Sales's claims. R & R at 10.

▮▮▮ Under Minnesota law, the doctrine of equitable estoppel provides that if a seller promises to repair defective goods and the buyer delays suit as a result of reasonably and detrimentally relying on the seller's promises, the limitations period is tolled during that period of delay. *See, e.g., Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc.*, 715 N.W.2d 458, 473 (Minn.Ct.App.2006) (discussing equitable tolling with respect to claims for defects in real property); *U.S. Leasing Corp. v. Biba Info. Processing Servs., Inc.*, 436 N.W.2d 823, 826 (Minn.App.1989) (discussing equitable tolling with respect to a claim for breach of warranty under the UCC). Without detrimental reliance by the buyer, however, equitable estoppel cannot toll the limitations period. Any detrimental reliance by Oren and Highway Sales ended no later than July 8, 2004, when Oren wrote to Blue Bird, told Blue Bird that he was "not interested in further retrofits, patches, or excuses," and insisted that he would "never take this coach back." Clearly, from that point forward, Oren and Highway Sales were not delaying any action in reliance on any promise by Blue Bird to repair the RV, and no reasonable jury could find otherwise. Thus, plaintiffs' claims for breach of implied warranty accrued on roughly July 31, 2003, and the limitations period, if it was tolled at all, began to run again no later than July 8, 2004. Because this suit was

brought over one year later, plaintiffs' implied-warranty claims are time-barred.

### 2. Express–Warranty Claim

■ The express Limited Warranty in this case explicitly extends to future performance by guaranteeing that components of the Wanderlodge M380 will be "free from defects in material and workmanship" for specific periods. Purvis Aff. Ex. 1.[4] Thus under UCC § 2–725, Highway Sales's claim for breach of express warranties accrued "when the breach [was] or should have been discovered." Minn. Stat. § 336.2–725(2).

■ Under Minnesota law, a seller's express future-performance warranty is not breached when the buyer discovers that the goods he purchased are defective. Rather, breach of the warranty occurs when the seller is unable or unwilling to maintain the goods as warranted. *See Church of Nativity of Our Lord v. Wat-Pro, Inc.*, 491 N.W.2d 1, 6 (Minn.1992), *overruled on other grounds, Ly v. Nystrom*, 615 N.W.2d 302, 314 n. 25 (Minn. 2000); *Anderson v. Crestliner, Inc.*, 564 N.W.2d 218, 223 (citing *Church of Nativity* ). Under the discovery rule embodied in UCC § 2–725(2), the buyer's cause of action for breach of express warranty accrues—i.e., the limitations period begins to run—when the seller's inability or unwillingness to repair the goods was discovered or should have been discovered by the buyer.

Blue Bird contends that it has *never* been unable or unwilling to repair the Wanderlodge M380 that it sold to Highway Sales. Def. S.J. Mem. at 8; Def. Obj. to R & R at 2 [Docket No. 108]. This, however, is just another way of saying that Blue Bird denies liability, and a defendant's mere denial of liability does not prevent a plaintiff's cause of action from accruing. *See Grand Island Express v. Timpte Indus., Inc.*, 28 F.3d 73, 75 (8th Cir.1994) (under Nebraska UCC, finding as a matter of law that breach-of-warranty claim accrued when buyer had to extensively repair purchased goods even though seller "refused to concede the validity of [buyer's] warranty claim"). Indeed, while denying liability, Blue Bird also argues that, because *Oren* concluded no later than July 8, 2004 that the RV was beyond repair, Highway Sales's claim accrued then and is therefore time-barred. Def. S.J. Mem. at 8–10; Def. Obj. to R & R at 3–5. The Court agrees, and holds that no reasonable jury could find otherwise. Moreover, as the Court explains below, if Highway Sales's claim is *not* time-barred, then it necessarily fails on the merits. Either way, defendants are entitled to summary judgment on Highway Sales's express-warranty claim.

As noted above, the limitations period for the express-warranty claim began to run when Highway Sales knew or reasonably should have known that one of two things had happened: either (1) Blue Bird was *unwilling* to maintain the RV as warranted; or (2) Blue Bird was *unable* to maintain the RV as warranted. The Court agrees with Judge Graham that a reasonable juror could conclude that Blue Bird did not express its *unwillingness* to repair Highway Sales's Wanderlodge M380 until some time in November 2004. *See* R & R at 8. Thus, if a seller's unwillingness to repair were the only thing that set the limitations period ticking on an express-warranty claim, Highway Sales's claim (filed on July 15, 2005) would be timely.

But a seller's *inability* to repair warranted goods can also start the running of

---

**4.** The warranty provides five-year/50,000 mile coverage for the chassis, body, and paint; three-year/36,000 mile coverage for most other components; and one-year coverage for preinstalled plasma TVs. Purvis Aff. Ex. 1.

a limitations period. And there is no doubt that as of July 8, 2004, Oren firmly and reasonably believed, based on the facts available to him at the time, that Blue Bird would never be *able* to repair the Wanderlodge M380 so that it would comply with Blue Bird's future-performance warranty. This belief—which is at the heart of Highway Sales's case—was sufficient to start the limitations period running no later than July 8, 2004.

▮ As a general rule, under Minnesota law, "[a] cause of action accrues and the statute of limitations begins to run when the cause of action will survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn.1999). When the discovery rule applies—as it does to some, but not all, causes of action—this general rule is modified slightly. Under the discovery rule, a claim accrues when a plaintiff knows or reasonably should know that he has a claim. Thus, a claim might accrue some time after the events giving rise to the claim (if those events are concealed or unknowable). And a claim might accrue some time before the plaintiff actually realizes that he has a claim (if the plaintiff is slow on the uptake). *See, e.g.*, Minn. Stat. § 541.05 subd. 1(6) (providing that cause of action for fraud does not accrue "until the discovery by the aggrieved party of the facts constituting the fraud"); *Rose Revocable Trust v. Eppich*, 640 N.W.2d 601, 607–08 (Minn.2002) (discussing Minnesota's discovery rule as it applies to the statute of limitations for fraud claims).

Section 2–725(2) of the UCC embodies the discovery rule with respect to future-performance warranties. Under § 2–725(2), a claim for breach of a future-performance warranty accrues when the plaintiff discovers or should have discovered the breach. *See* Minn.Stat. § 336.2–725(2).

▮ It is not necessary that a plaintiff know with certainty that he will prevail on a claim for that plaintiff to be held to "know of" that claim for limitations-period purposes. Plaintiffs rarely know with certainty that they will prevail at trial. For example, a buyer who learns that a seller breached a warranty and who files suit based on that knowledge might discover at the end of trial, to his disappointment, that the seller did not breach the warranty at all. But the jury's verdict does not mean that the limitations period on the claim never began to run.

▮ Rather, for limitations-period purposes, a plaintiff knows of—i.e., discovers—a cause of action when the plaintiff subjectively believes that he should prevail and can allege sufficient facts in support of that belief to state a cause of action. It follows that a plaintiff "discovers" or "knows of" a breach-of-warranty claim when the plaintiff *believes* that he has a breach-of-warranty claim, provided that there is a reasonable basis for that belief. *Cf. Harrison v. United States*, 708 F.2d 1023, 1027 ("In assessing the awareness required to trigger the statute of limitations, it is essential to distinguish between 'knowledge' and 'belief.' ... [C]onclusions based on dreams, intuitions, suspicion, conjecture, ESP, speculation, or faulty reasoning, even if true, are merely 'belief.' Absent a reasonable basis, these conclusions do not rise to the level of 'knowledge.' "). In other words, if a party (1) subjectively believes that he has a breach-of-warranty claim and (2) can allege facts sufficient to state such a claim, then the applicable limitations period is running on that claim. *See Herrmann*, 590 N.W.2d at 643; *see also Noske v. Friedberg*, 670 N.W.2d 740, 742–43 (Minn.2003) (citing *Herrmann* ).

In this case, there is no doubt that, by July 8, 2004, Highway Sales both believed that it had a breach-of-warranty claim and

could have alleged facts sufficient to state a cause of action for breach of warranty. Highway Sales knew that the Wanderlodge M380 was covered by an express warranty; it knew that despite numerous repairs, the RV suffered from related, serious defects over the course of almost a year; and it believed that Blue Bird was unable to repair the RV adequately. Accordingly, Highway Sales's express-warranty claim accrued no later than July 8, 2004.

Highway Sales attempts to save its express-warranty claim from untimeliness by arguing that even if the claim accrued on July 8, 2004—as the Court has found—the limitations period was tolled by Blue Bird's promises of repair. But as noted above in connection with Highway Sales's implied-warranty claim, Highway Sales did not delay any action in reliance on Blue Bird's promises after July 8. Without such reliance, equitable estoppel cannot save Highway Sales's express-warranty claim.

Significantly, Highway Sales's entire case is premised on the notion that as of July 8, 2004, Blue Bird had breached its express warranty—i.e., had proven itself unwilling or unable to repair the RV. Highway Sales asserts not only that it was entitled to a refund for breach of warranty as of July 8, but also that it was entitled to revoke its acceptance of the RV because it was so defective that it did not conform to the sales contract. Second Am. Compl. ¶¶ XXXII–XXXVII. Put another way, to prevail on its claims, Highway Sales must establish that the RV was so defective on July 8 that Blue Bird could not have adequately repaired it. But by establishing this fact, Highway Sales necessarily establishes that its express-warranty claim accrued on July 8.

In sum, if the RV *was* defective on July 8, 2004 (as Highway Sales alleges), Highway Sales's express-warranty claim is time-barred. If the RV was *not* defective

on July 8, 2004, Highway Sales's express-warranty claim is meritless. Either way, Highway Sales's express-warranty claim must be dismissed.

### C. Breach of Warranty—Magnuson–Moss Act

In Count 3 of its second amended complaint, Highway Sales raises federal claims under the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–12. The parties agree that Highway Sales's Magnuson–Moss Act claims are subject to the same limitations period as Highway Sales's breach-of-warranty claims under the Minnesota UCC. Def. S.J. Mem. at 10–11; Pl. S.J. Resp. at 21. Because Highway Sales's Minnesota breach-of-warranty claims are time-barred (as explained above), Highway Sales's Magnuson–Moss Act claims are also time-barred.

### D. Minnesota Lemon Law

Highway Sales raises a claim under Minnesota's "Lemon Law," Minn.Stat. § 325F.665, in Count 2 of its second amended complaint. As relevant to this case, the Lemon Law provides that when a dealer or manufacturer cannot repair a substantially defective new motor vehicle to make the vehicle comply with applicable express warranties, "the manufacturer shall either replace the new motor vehicle with a comparable motor vehicle or accept return of the vehicle from the consumer and refund to the consumer the full purchase price...." Minn.Stat. § 325F.665 subd. 3(a). The manufacturer's option to replace the defective vehicle, rather than refund the purchase price, is illusory, as the statute permits the buyer to reject a manufacturer's offer of replacement and to insist on a refund. *Id.* ("If the manufacturer offers a replacement vehicle under this section, the consumer has the option of rejecting the replacement vehicle and requiring the manufacturer to provide a refund.").

For purposes of its summary-judgment motion, Blue Bird does not dispute that a material issue of fact exists as to whether the Wanderlodge M380 purchased by Highway Sales was a lemon under subdivision 3(a) of § 325F.665—i.e., whether (1) the RV suffered a "defect or condition which substantially impair[ed] the use or market value" of the RV, and (2) Blue Bird was "unable to conform the [RV] to any applicable express warranty ... after a reasonable number of [repair] attempts." *See* Def. S.J. Mem. at 11–13. Instead, Blue Bird argues that regardless of the quality of the Wanderlodge M380, Highway Sales's Lemon Law claim fails as a matter of law because Highway Sales sold the RV rather than returning it to Blue Bird. *Id.* As did Judge Graham, R & R at 19, the Court agrees with Blue Bird.

The viability of Highway Sales's Lemon Law claim turns largely on the proper interpretation of a single word—"tender"—as used in one case—*Pfeiffer v. Ford Motor Co.*, 517 N.W.2d 76 (Minn.Ct. App.1994). The plaintiffs in *Pfeiffer,* after losing on their Lemon Law claim in arbitration proceedings, sold their purported lemon of a car to a third party and brought a state-court Lemon Law action. *Id.* at 78. *Pfeiffer* held that the Lemon Law claim was properly dismissed "because [the car buyers] failed to tender the vehicle as required by [the Minnesota Lemon Law]." *Id.* at 79. Although the Lemon Law does not actually use the word "tender," *Pfeiffer* observed that "[a] plain, common sense reading of [subdivision 3(a) of § 325F.665] evidences a requirement of tender of the allegedly defective vehicle in order to recover under the Lemon Law." *Id.* at 80.

According to Highway Sales, it did "tender"—i.e., "offer"—the Wanderlodge M380 to Blue Bird, but Blue Bird refused to take it back, and that refusal justified Highway Sales in selling the RV to a third party.

Blue Bird protests that Highway Sales's interpretation of the word "tender" is "strained," Def. Reply Mem. at 8 [Docket No. 93], but the Court disagrees. According to the *American Heritage Dictionary,* the verb "tender" means "to offer formally," as in "tender a letter of resignation." *American Heritage Dictionary of the English Language* (4th ed.2000), entry 2 for "tender," *available at* http://www.bartleby.com/61/30/T0103000.html. Letters of resignation that are tendered are not necessarily accepted. And *Black's Law Dictionary* defines the phrase "tender of performance" to mean "[a]n obligor's demonstration of *readiness, willingness, and ability* to perform the obligation...." *Black's Law Dictionary* 1507 (8th ed.2004) (emphasis added). In the abstract, then, it would seem reasonable to read *Pfeiffer* to mean that a plaintiff seeking to bring a Lemon Law claim must simply "offer," i.e., "tender," a defective vehicle to the manufacturer some time before bringing suit, regardless of whether the manufacturer takes the vehicle back, and regardless of whether the vehicle is still available at the time of suit.

The Court must, however, reject this reading of *Pfeiffer* in light of the language of Minnesota's Lemon Law, other language in *Pfeiffer,* and the policy underlying the Lemon Law. First, the statute itself contemplates that the buyer will in fact return a lemon to the manufacturer, and not just offer it back to the manufacturer. Under subdivision 3(a) of § 325F.665, a manufacturer must "either replace the [lemon] with a comparable motor vehicle or *accept return* of [the lemon] from the consumer and refund to the consumer the full purchase price." The remedy of a refund is expressly conditioned on the manufacturer's "accept[ing] return" of the lemon from the car buyer, not just on the buyer's "offering" or "tendering" the lemon back to the manufacturer.

Moreover, the Lemon Law is designed to protect not just the initial purchaser of a vehicle that turns out to be a lemon, but any subsequent purchasers of that vehicle. Subdivision 5 of § 325F.665 governs the resale of a vehicle that "has been *returned*" to the manufacturer under Minnesota's (or any other state's) Lemon Law. Minn.Stat. § 325F.665 subd. 5(a) (emphasis added). The Lemon Law altogether forbids the resale of certain lemons (those that had dangerously defective braking or steering systems). *Id.* subd. 5(b). As to less-dangerous lemons, the statute imposes *on the manufacturer* two obligations with respect to the resale of such lemons. First, the manufacturer must provide, for at least 12 months or 12,000 miles, "the same express warranty it provided to the original purchaser...." *Id.* subd. 5(a)(1). Second, the manufacturer must provide the consumer with a conspicuous notice, on a separate piece of paper, stating that the lemon being resold "was returned to the manufacturer because it did not conform to the manufacturer's express warranty and the nonconformity was not cured within a reasonable time as provided by Minnesota law." *Id.* subd. 5(a)(2). The Lemon Law's provisions governing the resale of lemons protect subsequent purchasers by imposing obligations on manufacturers—obligations that could not be imposed if a lemon were resold privately by the first purchaser, rather than returned to the manufacturer. Recognizing the importance of the Lemon Law's resale-related provisions, *Pfeiffer* observed: "We believe it is inconsistent to allow a Lemon Law recovery, while allowing the same injured party to pass the defective auto on to another consumer without notice or the warranty protections provided to the first owner." 517 N.W.2d at 80.

 This Court therefore reads *Pfeiffer* as holding that a buyer who has sold his vehicle before trial—that is, passed on his lemon to another rather than returning his lemon to the manufacturer—cannot recover under Minnesota's Lemon Law. *See Hull v. DaimlerChrysler Corp.,* 209 Ariz. 256, 99 P.3d 1026, 1028 (2004) (relying on *Pfeiffer* to hold that "a consumer is not entitled to relief under Arizona's Lemon Law if the consumer no longer possesses the vehicle"). While the Court is not bound by *Pfeiffer* because it is not a decision of the Minnesota Supreme Court, the Court nonetheless chooses to follow *Pfeiffer* both because it is persuasive evidence of how the Minnesota Supreme Court would interpret the state's Lemon Law, and because it is consistent with the language and policy of the Lemon Law itself. *See generally B.B. v. Continental Ins. Co.,* 8 F.3d 1288, 1291 (8th Cir.1993) (discussing the application of state law in diversity cases). Accordingly, Highway Sales's Lemon Law claim fails as a matter of law.

### E. Revocation of Acceptance

 Highway Sales alleges, in count 4 of its second amended complaint, that it revoked its acceptance of the Wanderlodge M380 against both the seller, Shorewood RV, and the manufacturer, Blue Bird. Under § 6–608 of the UCC, a buyer can, under some circumstances, revoke its acceptance of nonconforming goods that a seller has tendered and that the buyer has already accepted. Minn.Stat. § 336.2–608. As Judge Graham observed, a revocation-of-acceptance claim is a type of breach-of-contract claim; it is essentially a delayed rejection of nonconforming goods by the buyer. R & R at 13.

 A buyer can prevail on a revocation-of-acceptance claim only if several conditions are met. The conditions relevant to this case are the following: First, the goods must be substantially nonconforming. Minn.Stat. § 336.2–608(1). Second, the buyer must have been unable to

discover the nonconformity at delivery (otherwise the buyer should have rejected them, or retained them and sued under § 2–713 for breach of warranty). *Id.* § 336.2–608(1)(b). Finally, the buyer must revoke within a reasonable time of discovering the nonconformity and must "notif[y] the seller" of the revocation. *Id.* § 336.2–608(2). The notice of revocation must be unequivocal. *See* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 8–4, at 572 (5th ed.2006). Although the notice need not follow any particular format, it must "fairly apprise the seller that the buyer wants to give back the goods and receive a substitute or money in return." *Cissell Mfg. Co. v. Park,* 36 P.3d 85, 89 (Colo.Ct.App.2001).

Blue Bird and Shorewood RV challenge Highway Sales's revocation-of-acceptance claim on a number of grounds. The Court addresses them in turn.

 *First,* both defendants argue that because this claim rests on the same facts as Highway Sales's breach-of-warranty claim, it is subject to the same contractual limitations period and is therefore time-barred. Def. S.J. Mem. at 13–15. Judge Graham rejected this argument, R & R at 12–14, and the Court agrees with her analysis. As Judge Graham explains, a revocation claim under UCC § 2–608 is a type of breach-of-contract claim and differs from a breach-of-warranty claim. Although revocation and breach-of-warranty claims may arise from the same facts—as they do in this case—the UCC provides different remedies for, and imposes different requirements on, the two types of claims. *See Jaramillo v. Gonzales,* 132 N.M. 459, 50 P.3d 554, 559 (2002) ("[B]reach of warranty and revocation are separate and distinct claims. They are unconnected, and one may be found without the other."). Accordingly, Highway Sales's revocation-of-acceptance claim is subject to the four-year statute of limita-

tions found in UCC § 2–725(1), rather than the one-year contractual limitations period applicable in this case to breach-of-warranty claims. *See* Minn.Stat. § 336.2–725(1).

*Second,* Blue Bird contends that under Minnesota law, a revocation-of-acceptance claim cannot be brought against a nonselling manufacturer unless the selling dealer is insolvent or otherwise not amenable to suit. Def. S.J. Mem. at 20–23. Because Shorewood RV is both solvent and amenable to suit, argues Blue Bird, Highway Sales cannot revoke acceptance against Blue Bird as a matter of law. *Id.* Again, Judge Graham rejected this argument, R & R at 14–17, and again, the Court agrees with Judge Graham's analysis.

The Court sympathizes with Blue Bird's argument that allowing a buyer to revoke acceptance against a nonselling manufacturer is inconsistent with the language of UCC § 2–608. After all, the statute provides that a buyer's revocation "is not effective until the buyer notifies *the seller* of it." Minn.Stat. 336.2–608(2) (emphasis added). Further, in the typical case where a seller delivers nonconforming goods—where, for instance, the seller delivers red widgets when the buyer ordered blue ones—the manufacturer will have had no responsibility for or even knowledge of the seller's error. If the Court were writing on a clean slate, the Court would agree that UCC § 2–608 does not permit a buyer to revoke acceptance against a nonselling manufacturer.

 But the Court is not writing on a clean slate. The Court is bound to follow Minnesota law—and, under *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349 (Minn.1977), a motor-vehicle buyer may bring a revocation-of-acceptance claim under UCC § 2–608 against a nonselling vehicle manufacturer who has provided an express warranty. In *Durfee,* the Minne-

sota Supreme Court held that a car buyer could maintain a revocation claim against Saab–Scania, the nonselling manufacturer, based on the buyer's purchase of a defective Saab coupe. The court noted:

> The existence and comprehensiveness of a warranty undoubtedly are significant factors in a consumer's decision to purchase a particular automobile.... When the exclusive remedy found in the warranty fails of its essential purpose and when the remaining defects are substantial enough to justify revocation of acceptance, we think the buyer is entitled to look to the warrantor for relief. If plaintiff had sued Saab–Scania for breach of either express warranty or implied warranty, the absence of privity [between the buyer and Saab–Scania] would not bar the suit despite the language of the pertinent [UCC] sections. We see no reason why the result should differ merely because plaintiff has chosen to revoke his acceptance instead of suing for breach of warranty.

*Id.* at 357 (citations omitted).

It is true, as Blue Bird points out, Def. S.J. Mem. at 22, that the seller · of the defective Saab at issue in *Durfee* was insolvent, and that this seemed to matter to the court. After observing that if Saab–Scania were not liable to the buyer, he "may well be left without relief," *Durfee* held that "[a]lthough the relevant sections of Article 2 of the Uniform Commercial Code seem to require a buyer-seller relationship, Saab–Scania does not escape liability on this ground [i.e., because it was a nonselling manufacturer] in these circumstances." *Id.* Despite this language, however, the Court does not believe that *Durfee* can be read as narrowly as Blue Bird advocates. *See Christian v. Sony Corp.,* 152 F.Supp.2d 1184, 1188–89 (D.Minn.2001) (rejecting, based on *Durfee,* manufacturer's argument that "a claim for revocation of acceptance may only be asserted against a seller in privity with the buyer—not

against a remote manufacturer"). *Durfee's* reasoning rested largely on the nature of automobile warranties, as the lengthy passage quoted above illustrates, and that reasoning is independent of the immediate seller's solvency. The Court therefore rejects Blue Bird's argument that, as a nonselling manufacturer, it cannot be liable to Highway Sales under § 2–608.

*Third,* Shorewood RV and Blue Bird make related arguments about why Highway Sales's revocation-of-acceptance claim fails as a matter of law in light of Highway Sales's actions after Oren wrote to Blue Bird on July 8, 2004 demanding a refund. For its part, Shorewood RV argues that Highway Sale's effort to sell the Wanderlodge M380 through Shorewood RV on consignment, and Highway Sales's ultimately successful sale of the RV to Parliament Coach, foreclose Highway Sales's revocation-of-acceptance claim because these actions are inconsistent with a revocation claim against Shorewood RV. Def. S.J. Mem. at 18–19. Blue Bird makes a slightly different argument, contending that because Highway Sales sold the RV to Parliament Coach without complying with the UCC provisions that govern the post-revocation sale of goods by a revoking buyer, Highway Sales cannot, as a matter of law, bring a revocation-of-acceptance claim. *Id.* at 23–25.

Judge Graham found that because Highway Sales ultimately sold the RV to Parliament Coach without complying with the UCC, Highway Sales "reaccepted" the RV. R & R at 18. Accordingly, Judge Graham concluded that Highway Sales's revocation claim failed as a matter of law. The Court agrees with Judge Graham's conclusion, but arrives at it differently.

Under § 2–608(3), a buyer who has revoked his acceptance of goods but nonetheless maintains control of those goods is

subject to the requirement—found in § 2–602(2)(b), and incorporated in § 2–608(3) by reference—that the buyer "hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them[.]" *See* Minn.Stat. §§ 336.2–608(3) (imposing on revoking buyer "the same rights and duties with regard to the goods involved as if the buyer had rejected them"), 336.2–602(2)(b) (setting out duties of rejecting buyers). The theory underlying this requirement is that, after revocation, the goods belong not to the buyer, but to the seller—as they did before acceptance.

Relying on the law governing a buyer's preacceptance rejection of goods, at least one court has held that a buyer's revocation-of-acceptance claim failed as a matter of law where the buyer resold the goods after purportedly revoking acceptance. In *Chancellor Development Co. v. Brand,* the Missouri Court of Appeals observed that UCC § 2–606(1)(c) "provides that *any* act by a buyer inconsistent with seller's ownership will constitute acceptance of goods." 896 S.W.2d 672, 675 (Mo.Ct.App.1995); *see also* Minn.Stat. § 336.2–606(1)(c) ("Acceptance of goods occurs when the buyer . . . does any act inconsistent with the seller's ownership[.]"). *Chancellor Development* concluded that because revocation of acceptance is a type of delayed rejection, "[a] buyer's act of dominion over goods, including sale of the goods, is inconsistent with a buyer's claim of revocation of acceptance." 896 S.W.2d at 676.

This Court respectfully disagrees that *any* sale of goods by a buyer vitiates the buyer's revocation-of-acceptance claim. *Chancellor Development* reached this conclusion only by emphasizing UCC § 2–606 (governing rejection) at the expense of other relevant provisions of the UCC. Under § 2–711(3), a buyer who justifiably revokes acceptance of goods "has a security interest in goods in the buyer's possession or control . . . and may hold such goods *and resell them* in like manner as an aggrieved seller [i.e., in accordance with § 2–706]." Minn.Stat. § 336.2–711(3) (emphasis added). In other words, § 2–711(3) explicitly authorizes a buyer who has revoked acceptance of goods to "resell them" under certain circumstances. It cannot be the case, then, that the mere fact that a revoking buyer resells goods in his possession defeats the buyer's claim under § 2–608 for revocation of acceptance. *Chancellor Development's* broad language to the contrary cannot be reconciled with § 2–711(3).

The key cases on which *Chancellor Development* relied—cases in which other courts found that a revoking buyer's claims failed as a matter of law—involved not only the buyer's resale of the goods at issue, but also the buyer's failure to comply with the express requirements of § 2–608. In *Hays Merchandise, Inc. v. Dewey,* for instance (cited by *Chancellor Development,* 896 S.W.2d at 675–76), the Washington Supreme Court found that a buyer's revocation claim failed as a matter of law because "[t]he buyer's acts of pricing, displaying advertising and selling were for his own account and were not in keeping with the *duty to use reasonable care in holding the goods at the seller's disposition for a reasonable time.*" 78 Wash.2d 343, 474 P.2d 270, 273 (1970) (emphasis added). It is apparent from the italicized language in this quotation that *Hays Merchandise* turned not on the mere fact of resale by the buyer, but on the *nature* and *timing* of that resale, which the court found inconsistent with the buyer's express duty under §§ 2–608(2) and 2–602(2)(b) to hold the goods on the seller's behalf for a reasonable time.

In *Delhomme Industries, Inc. v. Houston Beechcraft, Inc.* (another case cited in *Chancellor Development,* 896 S.W.2d at 676), the Fifth Circuit upheld a district

court's finding that a buyer's revocation claim failed because the buyer did not give proper notice of revocation under § 2–608. 735 F.2d 177, 182–83 (5th Cir.1984). The buyer argued that by reselling a defective airplane to the original seller for a portion of the purchase price, the buyer had given notice of revocation. *Id.* at 182. It is true that *Delhomme* observed that "a bona fide sale ... is inconsistent with intent to revoke acceptance," *id.* at 182–83, but *Delhomme* was not a case in which the buyer gave notice of revocation and then, after a reasonable period of time, resold the goods at issue. Rather, the buyer in *Delhomme* argued that the resale *itself* was an adequate notice of revocation. The Fifth Circuit quite sensibly held that the district court had not clearly erred in finding that the buyer had not given adequate notice of revocation under § 2–608(2). *Id.* at 183.

■ In this case, there is no dispute that, at least with respect to Blue Bird, Highway Sales gave effective notice of revocation as of July 8, 2004. There is also no dispute that Highway Sales returned the Wanderlodge M380 to Shorewood RV around that time, did not attempt to sell it on consignment until September 2004, and did not succeed in selling it until February 2005 or some time afterwards. The Court finds, as a matter of law, that Highway Sales's resale-related actions were consistent with its duty to "hold [the RV] with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them[.]" *See* Minn.Stat. §§ 336.2–602(2)(b), 336.2–608(3). The Wanderlodge M380 was in the possession of Shorewood RV, Blue Bird's authorized dealer, for several months after Highway Sales notified Blue Bird that it was revoking its acceptance of the RV. Blue Bird could have taken possession of the RV at any time during that period.

■ It is also true, however, that when Highway Sales resold the RV to Parlia-

ment Coach, Highway Sales did not comply with the UCC's provisions governing a revoking buyer's resale of goods as to which the buyer has revoked acceptance. Under § 2–711(3), a buyer who justifiably revokes acceptance of goods has a security interest in the goods for the amount of the purchase price (plus certain expenses related to transporting and holding the goods). Minn.Stat. § 336.2–711(3). Provided that the buyer has held the goods for "a time sufficient to permit the seller to remove them" as required by §§ 2–608(3) and 2–602(2)(b), the UCC permits the buyer to redeem his security interest by reselling the goods "in like manner as an aggrieved seller." Minn.Stat. § 336.2–711(3).

Section 2–706 of the UCC governs resale by an "aggrieved seller." Minn.Stat. § 336.2–706. Under § 2–706(2), "every aspect of the sale including the method, manner, time, place and terms must be commercially reasonable." Minn.Stat. § 336.2–706(2). And under § 2–706(3), where the resale occurs not at a public sale (such as an auction), but rather at a private sale—as it did in this case when Highway Sales sold the RV to Parliament Coach—the aggrieved seller (or the revoking buyer) "must give ... reasonable notification of an intention to resell." Minn. Stat. § 336.2–706(3).

It is undisputed that Highway Sales did not give *any* notice to Blue Bird of its intention to resell the Wanderlodge M380 to Parliament Coach. Oren Dep. at 71–72, 116. Highway Sales argues that such notice was unnecessary for two reasons: First, Shorewood RV, as Blue Bird's agent, was aware of Highway Sales's general intent to sell the RV; and second, § 2–706(3), as applied to revoking buyers, requires only that notice be given to the seller, not to a nonselling manufacturer. Pl. Partial Obj. R & R at 5. Given High-

way Sales's insistence that it is entitled to bring a revocation-of-acceptance claim against Blue Bird despite the fact that § 2–608 refers only to sellers (and not to nonselling manufacturers), this second argument borders on the frivolous. As to the first argument—which appears only in a footnote, unencumbered by citation to authority, Pl. S.J. Resp. at 34 n. 6—the Court agrees with Judge Graham that no reasonable juror could find that Shorewood RV is Blue Bird's agent. R & R at 16–17. Accordingly, the Court finds that because Highway Sales did not give "reasonable notification" to Blue Bird before selling the RV to Parliament Coach, Highway Sales did not comply with §§ 2–711(3) and 2–706.

Does Highway Sales's resale to Parliament Coach in violation of § 2–706 defeat Highway Sales's revocation-of-acceptance claim as a matter of law? The Court thinks not. The official comments to § 2–706 indicate that an aggrieved seller's failure to comply with that section limits, but does not defeat, the seller's right to recover damages. An aggrieved seller who *complies* with § 2–706 can recover from a breaching buyer "the difference between the resale price and the contract price" plus incidental damages (and less any savings resulting from the buyer's breach). Minn.Stat. § 336.2–706(1). An aggrieved seller's *failure* to comply with § 2–706 "deprives the seller of the measure of damages here provided [i.e., under § 2–706(1)] and relegates him to that provided in Sec-

tion 2–708." UCC § 2–706 official cmt. 2. By analogy, when a revoking buyer fails to comply with § 2–706 when selling "in like manner as an aggrieved seller" under § 2–711(3), the buyer is not barred entirely from recovering damages for revocation of acceptance; rather, his damages are limited. The Court now turns to the question of *how* those damages are limited.[5]

Recall that, under § 2–711(3), a revoking buyer has a "security interest" in the goods for the amount of the purchase price plus certain expenses related to transporting and holding the goods. Secured transactions in general—in which the obligations of Party A to Party B are secured by Party B's security interest in collateral belonging to Party A—are governed in Minnesota by Revised Article 9 of the UCC. Sections 9–610 and 9–611 of the UCC, which establish the conditions under which a secured party may sell off collateral to redeem its security interest, resemble in key respects § 2–706, which governs the resale of goods by an aggrieved seller. *See* 1 James J. White and Robert S. Summers, *Uniform Commercial Code* § 7–6, at 472 ("Section 2–706 . . . lives in the shadow of a large body of case law on resales by secured creditors under [Article 9]."). Section 9–611, like §§ 2–706(3)–(4), requires that a secured party generally provide notice before selling off collateral. And § 9–610 provides, as does § 2–706(2), that "every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commer-

---

**5.** Because the analogy between revoking buyers and aggrieved sellers is not complete, the measure of damages for a revoking buyer who fails to comply with § 2–706 is not provided by § 2–708, which applies only to *actual* aggrieved sellers. As a general rule, the measure of a revoking buyer's damages is provided by § 2–711(1) (which allows the revoking buyer to recover whatever it has paid toward the price of the goods as to which the buyer revokes his acceptance) and either § 2–712 (if

the buyer "covers" by buying elsewhere) or § 2–713 (if the buyer does not cover). *See* Minn.Stat. § 336.2–711(1)(a)–(b), 336.2–712 to .2–713. By contrast, an aggrieved seller generally recovers damages under § 2–708. The Court therefore analyzes independently the effect on a revoking buyer's damages of his failure to comply with § 2–706 when reselling the goods as to which he has revoked acceptance.

cially reasonable." Minn.Stat. § 336.9–610(b).

■ Where a secured party sells collateral in violation of Article 9's requirements governing such sales, a rebuttable presumption arises that the proceeds of the sale fully satisfy the obligation that the collateral secured. *See generally* 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 34–14.a (5th ed.2002); *see also* Minn.Stat. §§ 336.9–626(a)(3)–(4). In other words, a secured party who sells a debtor's collateral in a commercially unreasonable fashion (or without giving notice) will not be entitled to recover a deficiency judgment for the difference between what the debtor owed and what the sale of the collateral brought, unless the secured party can establish what the sale of the collateral would have brought had the secured party complied with §§ 9–610 and 9–611.

■ It makes sense to take a similar approach when a revoking buyer otherwise complies with § 2–608 and justifiably revokes its acceptance of nonconforming goods, but then sells those goods "as an aggrieved seller" under § 2–711(3) without complying with § 2–706. Thus, a revoking buyer's commercially unreasonable sale, or sale without adequate notice, does not render the buyer's revocation ineffective. Instead, such a sale creates a rebuttable presumption that the buyer took the goods in full satisfaction of the security interest created under § 2–711(3). But such a sale does not diminish the buyer's right to seek incidental and consequential damages under § 2–712 (if the buyer "covers" by buying elsewhere) or § 2–713 (if the buyer does not cover). To hold otherwise would be inconsistent with § 2–711 itself, under which the revoking buyer's right to damages is separate from his security interest in, and right to resell, the goods as to which the buyer has revoked his acceptance. As the UCC official commentary

notes, "[t]he buyer's right to cover, or to have damages for nondelivery, *is not impaired by his exercise of his right of resale*" under § 2–711(3). UCC § 2–711 official cmt. 2 (emphasis added).

■ It follows that even though Highway Sales did not give Blue Bird adequate notice of Highway Sales's intention to sell the Wanderlodge M380 to Parliament Coach, Highway Sales's revocation-of-acceptance claim does not fail for this reason alone. Instead, the Court finds that Highway Sales's claim fails as a matter of law because Highway Sales revoked acceptance only against Blue Bird, and not against Shorewood RV.

As noted above, even though UCC § 2–608 does not appear to permit a buyer to revoke acceptance against a nonselling manufacturer, the Minnesota Supreme Court held in *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349 (Minn.1977), that a motor-vehicle buyer may bring a claim for revocation of acceptance under § 2–608 against a nonselling manufacturer that has provided an express warranty. But it would stretch this principle too far to allow such a claim to proceed against the nonselling manufacturer *alone* when the seller—although solvent and amenable to suit—has not received notice of revocation. After all, even under Minnesota law, it is plain that a buyer may normally only revoke acceptance against a seller. *Durfee* created a limited exception to this rule in cases involving express warranties (and perhaps only in cases involving motor vehicles). The Court is obligated to apply *Durfee*, but not to extend *Durfee* to permit a buyer to revoke *only* against the nonselling manufacturer when the selling dealer is solvent and amenable to suit.

In this case, there is no evidence that Highway Sales notified Shorewood RV that Highway Sales sought to revoke acceptance and receive a refund from *Shore-*

*wood RV.* Instead, the evidence is clear that Highway Sales gave only Blue Bird the requisite unequivocal notice of its intent to revoke acceptance, and Highway Sales sought a refund from Blue Bird alone. With respect to Shorewood RV, Highway Sales attempted to negotiate a consignment agreement that would have allowed Highway Sales, by reselling the Wanderlodge M380, to recover a portion of its purchase price (and, presumably, would have allowed some profit to Shorewood RV as the consignment seller). Highway Sales never intended, or tried, to seek a refund from Shorewood RV, as evidenced by the undisputed facts that (1) Highway Sales never gave Shorewood RV notice that it was revoking acceptance against Shorewood RV, and (2) Highway Sales sought to negotiate a consignment agreement with Shorewood RV to resell the Wanderlodge M380. Accordingly, no reasonable jury could find that Highway Sales revoked its acceptance against Shorewood RV.

Where a seller is solvent and amenable to suit, a buyer cannot revoke acceptance against a nonselling manufacturer *alone,* for this would be inconsistent with the policy and text of § 2–608 and would place responsibility for the delivery of nonconforming goods on the least responsible party. Because Highway Sales revoked its acceptance only against Blue Bird, and not against Shorewood RV, both defendants are entitled to summary judgment on Highway Sales's revocation-of-acceptance claim.

### ORDER

Based on the foregoing and on all the files, records, and proceedings herein, the Court ADOPTS IN PART Judge Graham's Report and Recommendation [Docket No. 105] to the extent that it is consistent with the foregoing, OVERRULES plaintiffs' partial objection [Docket No. 107], and SUSTAINS defendants' objection [Docket No. 108].

Defendants' motion for summary judgment [Docket No. 65] is GRANTED. This action is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.